Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

### WESTERN District of NORTH CAROLINA

### CHARLOTTE Division

FILED
CHARLOTTE, NC

APR 2 0 2021

US DISTRICT COURT
WESTERN DISTRICT OF NC

|  |  |
|---|---|
| ANDRE ANTONIO DAVIS | Case No. 3:21cv177 MOC |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☒ Yes ☐ No |
| -v- | |
| MICROSOFT CORPORATION & SHAREHOLDERS | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### (Non–Prisoner Complaint)

---

#### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | ANDRE ANTONIO DAVIS          plaintiff in pro per |
| Address | P.O BOX 551239 |

| | | |
|---|---|---|
| GASTONA | NC | 28054 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | GASTON COUNTY |
| Telephone Number | (980) 251-1605 |
| E-Mail Address | |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | SATYA NADELLA |
| Job or Title *(if known)* | MICROSOFT CORPORATION   CHIEF EXECUTIVE |
| Address | 1 Microsoft Way |

| | | |
|---|---|---|
| Redmond | WA | 98052 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | KING COUNTY |
| Telephone Number | 1-425-882-8080 |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | BILL GATES |
| Job or Title *(if known)* | CO-OWNER |
| Address | 1 Microsoft Way |

| | | |
|---|---|---|
| Redmond | WA | 98052 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | KING COUNTY |
| Telephone Number | 1-425-882-8080 |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☑ Official capacity

Defendant No. 3
    Name      Bradford L. Smith

    Job or Title *(if known)*      President/Legal Officer Microsoft Corp.

    Address

| REDMOND | WA | 98052 |
|---|---|---|
| *City* | *State* | *Zip Code* |

    County      KING COUNTY

    Telephone Number      1-425-882-8080

    E-Mail Address *(if known)*

    ☐ Individual capacity    ☑ Official capacity Type text here

Defendant No. 4
    Name      KEITH SCHIFFERLI

    Job or Title *(if known)*      KEY PRINCIPAL  MICROSOFT CORP

    Address      8055 MICROSOFT WAY

| CHARLOTTE | NC | 28273-8106 |
|---|---|---|
| *City* | *State* | *Zip Code* |

    County      MECKLENBURG COUNTY

    Telephone Number      704-527-2987

    E-Mail Address *(if known)*

    ☐ Individual capacity    ☑ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.      Are you bringing suit against *(check all that apply)*:

     ☑ ~~Federal officials (a *Bivens* claim)~~

     ☑ State or local officials (a § 1983 claim)

B.      Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

     Breach of Contract

C.      Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Violations of Civil Constitutional Rights under Bivens Action , 403 U.S. 388 (1971)

N/A

D.      Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      Where did the events giving rise to your claim(s) occur?

NC

B.      What date and approximate time did the events giving rise to your claim(s) occur?

Jan 15 2021

C.      What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)* Microsoft Corporation has been

hacking my Data aiding the Infragard  to convert Mr, computer, car and cellphone into an

Alexis device  without permission to listen into my home using the screen as live camera and

using the data to track my IP address, cellphone and  vehicle location to keep up with Mr.

Davis whereabouts and which is exposed local national and worldwide money laundering

and kickback scheme subjecting Mr. Davis and others in the same situation to domestic

terrorisms and control and to hide their illegal bribes and laundering. Mr. Davis has been

attacked by algorithms that was racist, bully by the Microsoft Hack teams and Infragard

agents that get paid to be online and as previously mentioned to follow harass even with a

paid Vpn. Therefore Microsoft is liable for damages and injury to Mr. Davis.

**IV.** **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

mental anguish, depression, paranoid loss of sleep and other medical concerns.

**V.** **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Amount excess 1,200,000,000.00 applicable under this courts jurisdiction.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            4/20/2021

Signature of Plaintiff        *Andre Davis*
Printed Name of Plaintiff        Andre Antonio Davis

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number
E-mail Address

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**Elements:**

Breach of Contract……………………………………………………...17,18

Damages……………………………………….18

Valid contract…………………………………….18

Damages…………………………………………..18

A breach is failure………………………………18

Damages…………………………………………..19

Proximate cause………………………………………19

Damages…………………………………..19

Damages…………………………………………..19

Damages……………………………………………..19

**SECOND CAUSE OF ACTION**

**Violation of the Federal Trade Commission Act**

**Elements:**

Violation of the Federal Trade Commission Act………………………………19-21

Damages…………………………………………………………..21

The representation, omission, or practice must mislead or be likely to mislead the consumer………………………………………21

Damages……………………………………………..21

The consumer's interpretation of the representation, omission, or practice must be reasonable under the circumstances……………….......................22

Damages………………………………………………………22

The misleading representation, omission, or practice must be material…………………22,23

1

Damages..............................................................23


**THIRD CAUSE OF ACTION**

**Violation of the Clayton Act**

**Section 4**

**Elements:**

Violation of the Clayton Act Section 4.......................................23

Damages………………………………………………23


**FOURTH CAUSE OF ACTION**

**Section 7**

**Elements:**

Violation of the Clayton Act Section 7…………………………..24

Damages………………………………………………………24


**FIFTH CAUSE OF ACTION**

**Violation of the Clayton Act**

**Section 16**

**Elements:**

Violation of the Clayton Act Section 16 …………………………………25

Damages………………………………………………25


**SIXTH CAUSE OF ACTION**

**Elements of the Offense Section 1 of the Sherman Act 15 U.S.C. Section 1**

**Elements:**

Elements of the Offense Section 1 of the Sherman Act 15 U.S.C. Section 1……………..25-27

Damages……………………….27

2

**SEVENTH CAUSE OF ACTION**

**Violation of the Sherman Act I**

**Elements:**

Violation of the Sherman Act I………………………………..27

Damages……………………………………………………………27

**EIGHTH CAUSE OF ACTION**

**Violation of the Sherman Act II**

**Elements:**

Violation of the Sherman Act II………………………………….28,29

Damages…………………………………………………………..29

**NINTH CAUSE OF ACTION**

**Violation of the Travel Act 18 U. S. C. Section 1952**

**Elements:**

Violation of the Travel Act 18 U. S. C. Section 1952………………………….29-31

Damages…………………………………………………………..31

**TENTH CAUSE OF ACTION**

**Violation of the Necessary and Proper Clause**

**Elements:**

Violation of the Necessary and Proper Clause………………………….31

Damages…………………………………………………………………………..31

**ELEVENTH CAUSE OF ACTION 9**

**Violation of Congress Enumerated Powers of the Federal Constitution**

**Elements:**

Violation of Congress Enumerated Powers of the Federal Constitution.................32-36

Damages.................................................................36

**TWELFTH CAUSE OF ACTION**

**Violation of the Commerce Clause Article I, Section 8, Clause 3**

**Elements:**

Violation of the Commerce Clause Article I, Section 8, Clause 3.........................36,37

Damages.................................................................37

**THIRTEENTH CAUSE OF ACTION**

**Laundering of monetary instruments 18 U.S.C 1956**

**Elements:**

Laundering of monetary instruments 18 U.S.C 1956......................................37-49

Damages.................................................................50

**FOURTEENTH CAUSE OF ACTION**

**Engaging in monetary transactions in property derived from specified unlawful activity 18 U.S.C 1957**

**Elements:**

Engaging in monetary transactions in property derived from specified unlawful activity 18 U.S.C 1957.................................................................50

4

Damages………………………………………………………..50


**FIFTEENTH CAUSE OF ACTION**

**Negligent Supervision**

**Elements:**

Negligent supervision..........................50,51

Damages……………..51

The defendant had a duty to supervise the harming party………...51.

Damages……………………………………………51

The defendant negligently supervised the harming party……………51,52

Damages…………………………………………..52

Such negligence proximately cause the…………………………………… 52

Damages……………………………………………………………………..52


**SIXTEENTH CAUSE OF ACTION**

**Negligent Hiring**

**Elements:**

Negligent Hiring………………………………………………………52,53

Damages…………………………………53

That the employer owed the injured party (plaintiff) a duty of care…………53

Damages………………………………53

The injury to the plaintiff was reasonably foreseeable……………………………53,54.

Damages………………………………54


**SEVENTEETH CAUSE OF ACTION**

**Anti kickback act of 1986**

**Elements:**

Anti kickback act...............................................54,55

Damages...........................................................................55

# EIGHTEENTH CAUSE OF ACTION

**18 U.S. Code § 1951 - Interference with commerce by threats or violence**

**Elements:**

18 U.S. Code § 1951 - Interference with commerce by threats or violence..................56,57

Damages...............................................57

# NINETEETH CAUSE OF ACTION

**Theft or bribery concerning programs receiving Federal funds**

**18 U. S. section 666**

**Elements:**

Theft or bribery concerning programs receiving Federal funds

18 U. S. section 666................................................57-60

Damages.......................................60

**TWENTIETH CAUSE OF ACTION**

**Hobbs Act 18 USC § 1951**

**Elements:**

Hobbs Act 18 USC § 1951.........................................................60,61.

Damages.................................................................61

**TWENTIETH FIRST CAUSE OF ACTION**

**Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961) 1961)**

**Elements:**

Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961)

1961)............61,62

Damages...........................................62

**TWENTIETH SECOND CAUSE OF ACTION**

**(15 U.S. Code § 78dd–1 - Prohibited foreign trade practices by issuers)**

**Elements:**

15 U.S. Code § 78dd–1 - Prohibited foreign trade practices by issuers.........62-71

Damages...............................................................71

**TWENTIETH THIRD CAUSE OF ACTION**

**(15 U.S. Code § 78dd–2 - Prohibited foreign trade practices by issuers)**

**Elements:**

15 U.S. Code § 78dd–1 - Prohibited foreign trade practices by issuers.........71-82

Damages...............................................................82

**TWENTIETH FOURTH CAUSE OF ACTION**

**(15 U.S. Code § 78dd–3 - Prohibited foreign trade practices by issuers)**

**Elements:**

15 U.S. Code § 78dd–3 - Prohibited foreign trade practices by issuers…82-89


Damages……………………………………………………………………89


**TWENTIETH FIFTH CAUSE OF ACTION**

**Violation of Civil Rights Act**

**Elements:**

Violation of Civil Rights Act……………………………………89,90


Damage…………………………91


**TWENTIETH SIXTH CAUSE OF ACTION**

**Inclusion Upon Seclusion**

**Elements:**

Inclusion Upon Seclusion……………………………………………………91

Damages……………………………………………………………..91

Intentionally……………………………………………92

Damages…………………………………………………………..92

Intruding………………………………………92

Damage………………………………………………92

On the solitude or seclusion of another person, or on their private affairs…………………92,93.

Damages……………………………………………………93

In a manner that would be highly offensive to a reasonable person…………………………93

Damages……………………………………………………93

Damages compensatory...........................93,94

Damages...................................................94

## TWENTIETH SEVETH CAUSE OF ACTION
### False Imprisonment
### Elements:

False imprisonment...................................94

Damages........................94

Illegal restraint of a person...............................................94,95

Damages.....................................95

By force or threat of force........................95

Damages...............................95

Without the other person's consent( or against their will).......................96

Damages................................96

Proximate cause..................................96

Damages................................96

Reasonable person.................................................................96,97

Damages................................................97

## TWENTIETH EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Elements:

Intentional Infliction of Emotional Distress...................................97

Damages.......................................97

The defendant must act intentionally or recklessly.................97,98

Damages...........................98

The defendant's conduct must be extreme and outrageous.........................98

Damages..........................................98

The conduct must be the cause.....................98,99

Damages...........................99

Of severe emotional distress.......................................99

Damages ..............................99.

## TWENTIETH NINTH CAUSE OF ACTION

**Assault and Battery**

**Elements:**

Assault and Battery.............99,100

An act by a defendant...............................100

Damages...............100

An intent to cause harmful or offensive contact on the part of the defendant............100,101

Damages..........................................101

Harmful or offensive contact to the victim.................................101

Damages.................................101

Proximate Cause.................................................101

Damages.................................102

## THIRTIETH CAUSE OF ACTION

**Joint and Severally**

**Elements:**

Joint and Severally...................................................................102

Damages...............................................102

## THIRTIETH ONE CAUSE OF ACTION

**Enterprise Liabililty**

**Elements:**

Enterprise Liability............................................102,103

Damages............................103

the plaintiff must show that he was injured by a product...........103

Damages............................103

that the injury occurred because the product was defective....103

Damages............................103

third, that the defect existed at the time the product left the defendant's hands....104

Damages............................104


## THIRTIETH SECOND CAUSE OF ACTION

**Sarbanes Oxley Act (SOX) (18 U.S.C. §1514A)**

**Elements:**

Sarbanes Oxley Act (SOX) (18 U.S.C. §1514A)............................104-108

Damages.......................108


## THIRTIETH THIRD CAUSE OF ACTION

**Electronics Communications Privacy Act of 1986**

**Wiretap Act 18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited.**

**Elements:**

Electronics Communications Privacy Act of 1986

Wiretap Act 18 U.S. Code section 2511-Interception and disclosure of wire, oral, or electronic communications prohibited...................................................................108-119

Damages.....................................119

**THIRTIETH FOURTH CAUSE OF ACTION**

**Treason U. S. C. 2381**

**Elements**:

Treason.......................................................119

Damages...................................................119

**THIRTIETH FIFTH  CAUSE OF ACTION**

**Acts of Terrorism Transcending National Boundaries**

**18 U. S. C. Code 2332b**

Elements:

Acts of Terrorism Transcending National Boundaries

18 U. S. C. Code 2332b.......................................................119-126

Damages.......................................................126

**THIRTIETH SIXTH CAUSE OF ACTION**

**Respondeat Superior**

**Elements:**

Respondeat Superior.......................................................126,127

Damages...................................................127

the agent of the corporation committed the crime..................127

Damages...............................................127

While acting within the scope of the agent's authority..................127,128

Damages...........................128

With an intent to benefit the corporation....................128

Damages...................................................128

Duty..................................128,129.

Damages...........................129

Proximate cause...........................................

Damages.............................

## CITATIONS

Assocation of Data Processing Service Organizations, Inc v. Cam 397 U. S. 150 (1970)..........18

Barlow v. Collins, 397 U. S. 159 (1970)............................18

Berman v. Parker, 348 U.S. 26 (1954)......................90

Brown v. Board of Education, 347 U.S. 483 (1954)................90

Burger King Corp v. Ridzewicz 417 U. S. 462 (1985)...........................................13

Carpenter v. United States, 267 U. S. 132 .................92

Dixson v. United States, 465 U.S. 482 (1984)..........58

Evans v. United States, 504 U.S. 255, 265, 112 S.Ct. 1181, 1188 (1992)..............60

Flast v. Cohen 392 U. S. 83 (1968)...............................18

Gibbons v. Ogden (1824).............................31

Hadley v Baxendale [1854] EWHC J70..............................15

Hawkins v. McGee, 84 N.H. 114, 146 A. 641 (N.H. 1929)

Herpich v. Wallace, 430 F. 2 d 792 (5th Cir. 1970)......................18

Herring v. Boyle  1 Cr. M. & R. 377, 149 Eng. Rep. 1126 (Ex. 1834)...........90

Hoffman v. Clinic Hospital, Inc., 213 N.C. 669, 197 S.E. 161 (1938)....................90

International Shoe Co. v. Washington, 326 U. S. 310 (1945)...........................................13

Katz v. United States, 389 U.S. 347 (1967)............................90

Kent v. Dulles, 357 U.S. 116 (1958)..................................90

Lucy v. Zehmer, 196 Va. 493; 84 S.E.2d 516 (1954)....................15

McCulloch v. Maryland (1819)........................................30

McGee v. International Life Insurance Co. 355 U. S. 220 (1957).................... 13

Perkins v. Benguet Mining Co., 342 U. S. 437 (1952).......................13

Perrin v. United States, 444 U.S. 37 (1979)...........................................29

13

Philadelphia Electric Co. v. Anaconda American Brass Co., 47 F.R.D. 557 (E.D.Pa.1969).......22

SEC v. WorldCom Inc. 452 F. Supp. 2d 531 (S.D.N.Y. 2006)..........108

United States v. American Tobacco Company, 221 U. S. 106 (1911)............21

United States v. AT&T 552 F. Supp. 131 (D. D. C 1982)..................21,25

United States v. Culbert, 435 U.S. 371, 98 S.Ct. 1112 (1978)..................60

United States v. Guest, 383 U.S. 745 (1966)............................90

United States v. Jones, 565 U.S. 400 (2012)................................18,90

United States ex rel. Moilan v. McAllen Hospitals, L.P., et al., Case No. M-05-CV-263 S.D. Tex.2009..........................54

United States v. National Lead Co. 332 U.S. 319 (1947)................18

United States v. Nardello, 393 U. S. 286.....................................27

United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1118 (D.C. Cir. 2009)........62

United States v. Philadelphia National Bank, 374 U.S. 321 (1963)..................22

United States v. Pomponio 511 F.2d 953 (4th Cir. 1975)..........27

United States v. Von's Grocery Co., 384 U.S. 270 (1966).....................22

Verizon v. Trinko, 540 U.S. 398 (2004).....................26

Wickard v. Filburn, 317 U.S. 111 (1942)....................................31

Willis v. Willis, 776 S.E. 2d 364...........................................13

1

Andre Antonio Davis

P.O. Box 551329

GASTONIA, NC 28054

Plaintiff in Pro Per

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Andre Antonio Davis | ) Case No: |
| | ) |
| Plaintiff | ) |
| vs. | ) COMPLAINT FOR VIOLATION |
| | ) OF |
| Microsoft Corporation | ) CIVIL AND CONSTITUTIONAL |
| & | ) |
| | ) RIGHTS |
| Shareholders | ) |
| | ) DEMAND FOR JURY TRIAL |

---

**JURISDICTION**

1. This is a civil action brought for violations First, Second, Fourth ,Fifth, Ninth,

Thirteenth and Fourteenth Amendments to the United States Constitution Section 15 U.S.C.

Section 45 (a) 1 Section(s)1,2, and 15 .. The jurisdiction of this Court is founded upon Sections

28 U. S. C. 1331, 1332 (a), (1), 1391 and Sections 1651, 2201 and 2202. See[1][2][3][4][5]

[1] Burger King Corp v. Ridzewicz 417 U. S. 462 (1985)

[2] International Shoe Co. v. Washington, 326 U. S. 310 (1945) [3] McGee v. International

Life Insurance Co. 355 U. S. 220 (1957)

15

[4] Perkins v. Benguet Mining Co., 342 U. S. 437 (1952).

[5] Willis v. Willis, 776 S.E. 2d 364.

## PARTIES

2.    At all relevant times, Plaintiff was a citizen of the United States and a Honorable

discharged Veteran that served in the U. S. Marine Corps. during the Gulf War Era and resident

of Gastonia, North Carolina.

3.    The Defendant(s) Microsoft  Inc. and Shareholders is a worldwide tech and software

company operating in the State of North Carolina.

4.    Defendants Executive Officer/President  of Microsoft are Satya Nadella and

shareholders.

## FACTS

5.    The Defendant Microsoft  Inc. and Shareholders is liable for breach of contract,

discrimination, fraud, false imprisonment, harassment by algorithm,  and conspiring with a

company called Infragard conspiring to receive bribes and kickbacks and money laundering

when both companies colluded in tracking Mr. Davis on his computer and assisting Infragard in

investigation against including hacking home computer in order to gather monitor and

reconfigure software to aide Infragard to hold Mr. Davis in a technology prison of control and

manipulation and other deprivations of the mental for the gaslighting used  constantly  tracking

Mr. Davis ip address and the data within and sharing amounts Infragard agents others in a

worldwide money laundering stealing from the US treasury and illegal monitoring and

imprisonment and Microsoft and shareholders was the main hub to the cartel spokes that made this illegal operation operational.

6.    At all times, relevant and material to this complaint, all the Defendants were acting under the color of state law.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

7.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs

8.    Defendant intended to commit breach of contract. [1][2][3]  Breach of Contract is a legal cause of action and a type of civil wrong, in which a binding agreement or bargained-for exchange is not honored by one or more of the parties to the contract by non-performance or interference with the other party's performance. Breach occurs when a party to a contract fails to fulfill its obligation(s), whether partially or wholly, as described in the contract, or communicates an intent to fail the obligation or otherwise appears not to be able to perform its obligation under the contract. Where there is breach of contract, the resulting damages will have to be paid by the party breaching the contract to the aggrieved party. Defendant Microsoft Inc. and Shareholders breach of contract was intentionally installing tracking on Mr. Davis IP address and sharing the information through its software program clouds and mainframes controlling the flow software uploads and updates to listen in and give Infragard a video camara inside Mr. Davis home with live audio and video feeds  from an illegal operation throughout the state is consider a search resulted in Mr. Davis damages and injury.  Therefore, defendants Microsoft Inc. and Shareholders is liable for breach of contract.

[1] Hadley v Baxendale [1854] EWHC J70 [2] Hawkins v. McGee, 84 N.H. 114, 146 A. 641 (N.H. 1929)

[3] Lucy v. Zehmer, 196 Va. 493; 84 S.E.2d 516 (1954).

9.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury.  Defendants are liable for damages.


10.    Defendants Microsoft Inc. and Shareholders to commit valid contract.  Valid contract is a written or expressed agreement between two parties to provide a product or service. Defendants Microsoft Inc. and Shareholders was to rent its program Microsoft Windows paying yearly for its program Mr. Davis was doing that and do to its monoply Mr. Davis cannot find any other program choices so he is stuck with the abuse from using the software and Microsoft and shareholders agreement was to insure Mr. Davis would receive full use of its software with the security protections which was breach allow others to  injury to Mr. Davis.  Therefore, defendant Microsoft  Inc. and Shareholders is liable for valid contract.

11.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

12.    Defendants Microsoft Inc. and Shareholders intended to commit a breach.  A breach is failure to perform a contract (breaking its terms). Defendants Microsoft  Inc. and Shareholders breach was allowing permissions via its technical faculties mainframes cloud computing servers satellites  aiding and abetting government contractor Infragard and companies around the for world in a kickback and bribe monies to track Mr. Davis IP address thru its software program to cause harm resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of a breach.

18

13.     Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

14.     Defendants Microsoft Inc. and Shareholders intended to commit proximate cause. Proximate cause is legal cause," or one that the law recognizes as the primary cause of the injury. Defendants Microsoft Inc. and Shareholders proximate cause was to intentional have Mr. Davis tracked and harass by allowing millions upon millions shared access to his internet traffic thru its facilities resulting in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders  is liable of proximate cause.

15.     Damages owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

16.     Defendants Microsoft Inc. and Shareholders intended to commit a damages.  Damages is  Damages refers to the sum of money the law imposes for a breach of some duty or violation of some right.  Compensatory damages, like the name suggests, are intended to compensate the injured party for loss or injury.  Defendants  damages was breaching the contract terms and violation of Mr. Davis civil and constitutional rights while using Microsoft Windows software resulted in damages and injury to Mr. Davis. Therefore, defendants  Microsoft Inc. and Shareholders is liable for damages.

17.     Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

## SECOND CAUSE OF ACTION
### (Violation of the Federal Trade Commission Act)
### (USC 15 Section 45)
### (Section 5)

18.   Plaintiff reallege and incorporate by reference all of the preceding paragraphs

19.   Defendants Microsoft Inc. and Shareholders  intended to commit Violation of the
Federal Trade Commission Act. See [1][2][3][4][5][6][7] Violation of the Federal Trade
Commission Act Section 5(a) of the Federal Trade Commission Act (FTC Act) (15 USC §45)
prohibits "unfair or deceptive acts or practices in or affecting commerce." This prohibition
applies to all persons engaged in commerce, including banks. The legal standards for unfairness
and deception are independent of each other. Defendants Microsoft Inc. and Shareholders
Violation of the Federal Trade Act was to perform unfair or deceptive acts by subjecting their
customer Mr. Davis to unfair representation while in the process of using their software program
Microsoft Windows giving Mr. Davis information to others attempting to do Mr. Davis harm and
treatment and harassment by tracking his Ip address[8],, and allowing persons backdoor access to
Mr. Davis software so they can use his computer like their Alexis program even when Mr. Davis
denied install such program do to its invasiveness Microsoft Inc and its shareholders found
another way to getting in using Mr. Davis computer as a camera, live video feed with live audio
that the transmission is slinged across the globe and shared with others having the same software
in a cartal and controlling type manner resulting Mr. Davis damages and injury. Therefore,
defendants Microsoft Inc. and Shareholders is liable for Violation of the Federal Trade
Commission Act.

[1] United States v. National Lead Co. 332 U.S. 319 (1947)

[2] Flast v. Cohen 392 U. S. 83 (1968)

[3] Assocation of Data Processing Service Organizations, Inc v. Cam 397 U. S. 150 (1970)

[4] Barlow v. Collins, 397 U. S. 159 (1970)

[5] Herpich v. Wallace, 430 F. 2 d 792 (5th Cir. 1970)

[6] Texas & Pacific Railway Co. v. Ringsby 241 U. S. 33 (1916)

[7] Reitmeister v. Reitmeister  162 F. 691, 694 (2d Cir. 1947)

[8] United States v. Jones, 565 U.S. 400 (2012)

20.    Defendants  owe damages in an amount greater than 75,000 for plaintiff injury.
Defendants are liable for damages.

21.    Defendants Microsoft Inc. and Shareholders intended to commit the representation,
omission, or practice must mislead or be likely to mislead the consumer. The representation,
omission, or practice must mislead or be likely to mislead the consumer is A misrepresentation is
an express or implied statement contrary to fact. A misleading omission occurs when qualifying
information necessary to prevent a practice, claim, representation, or reasonable expectation or
belief from being misleading is not disclosed.  Defendants   the representation, omission, or
practice must mislead was Mr. Davis was lead to believe he was purchasing a useful tool to aid
in everyday tasks instead Mr. Davis was sold a piece of spy equipment and due to it size and
control Mr. Davis is stuck using their Microsoft software because they are the only one in
commerce with such a program and control other companies programs  but you have to use it as
if its listening to your conversation and monitoring you it bullies you harass you but it can still
see what you type and where you go on the internet was a result of Mr. Davis damages and
injury. Therefore, defendants Microsoft Inc. and Shareholders  is liable of the representation,
omission, or practice must mislead or be likely to mislead the consumer.

22.    Damages owe damages in an amount greater than 75,000 for plaintiff injury.  Defendants
are liable for damages.

23. Defendants Microsoft Inc. and Shareholders intended to commit the consumer's interpretation of the representation, omission, or practice must be reasonable under the circumstances. The consumer's interpretation of the representation, omission, or practice must be reasonable under the circumstances is The test is whether the consumer's expectations or interpretation are reasonable in light of the claims made. Defendants Microsoft Inc. and Shareholders the consumer's interpretation of the representation, omission, or practice must be reasonable under the circumstances was more than reasonable no sane person would want to be track everywhere and listen in on from any body in the world using the same program and with constant twenty four hour control over your computer this is suppose to be a useful tool to manage work loads and workflows instead it bullies you harass you track you and look inside your home where you except privacy the most resulted in damages and Mr. Davis injury. Therefore, Microsoft Inc. and Shareholders is liable of The consumer's interpretation of the representation, omission, or practice must be reasonable under the circumstances.

24. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

25. Defendants Microsoft Inc. and Shareholders intended to commit The misleading representation, omission, or practice must be material. The misleading representation, omission, or practice must be material is one for deception to occur which is likely to affect a consumer's choice of or conduct regarding a product. In other words, it is information that is important to consumers. Defendants Microsoft Inc. and Shareholders The misleading representation, omission, or practice must be material was material it was how false and convincing that you believe you pay yearly for a subscription instead you paying for a tool that Micosoft and its partners using to enslave you on the internet bully and take and use your data how they see fit be

22

that sharing information and data to other companies and unauthorized persons. Therefore,

defendants Microsoft Inc. and Shareholders  is liable of the misleading representation, omission,

or practice must be material.

26.    Defendants owe damages in an amount greater than 75,000 for plaintiff injury.

Defendants are liable for damages.

## THIRD CAUSE OF ACTION
### (Violation of Clayton Act 4)

27.    Plaintiff realleges and incorporate by reference all of the preceding paragraphs

28.    Defendants Microsoft Inc. and Shareholders intended to commit Violation of Clayton

Act 4[1][2][3].  Violation of Clayton Act 4 is a piece of legislation passed by the U.S. Congress

in 1914. The act defines unethical business practices, such as price-fixing and monopolies, and

upholds various rights of labor.  Defendants Microsoft Inc. and Shareholders Violation of the

Clayton Act 4 was the illegal formation or attempted illegal formation of a monoply in order to

get kickbacks and bribes with government contractor Infragard and other well known companies

running a cartel styled operation to undermine and steal from the US Treasure is illegal and

resulted in Mr. Davis damages and injury.  Therefore, defendants Microsoft Inc. and

Shareholders Violation of the Clayton Act 4.

[1]  Standard Oil Co. of California v. United States, 337 U.S. 293 (1949)

[2] United States v. AT&T 552 F. Supp. 131 (D. D. C 1982)

[3] United States v. American Tobacco Company, 221 U. S. 106 (1911).

29.    Defendants owe trebles damages three times the amount for plaintiff injury.  Defendants are liable for damages.

## FOURTH CAUSE OF ACTION
### (Violation of Clayton Act 7)

30.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

31.    Defendants Microsoft Inc. and Shareholders  intended to commit Violation of Clayton Act 7. See [1][2][3]  Violation of Clayton Act 7 is prohibits mergers and acquisitions where the effect "may be substantially to lessen competition, or to tend to create a monopoly." As amended by the Robinson-Patman Act of 1936, the Clayton Act also bans certain discriminatory prices, services, and allowances in dealings between merchants.  Defendants Microsoft Inc. and Shareholders Violation of the Clayton Act 7 was Microsoft and Shareholders to strategized a monumental illegal effort and to coordinated  with businesses intrastate, interstate, and worldwide to form monopolies undermining US commerce take from Mr. Davis and the US government resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of Violation of Clayton Act 7.

[1] United States v. Philadelphia National Bank, 374 U.S. 321 (1963)

[2] United States v. Von's Grocery Co., 384 U.S. 270 (1966)

[3] Philadelphia Electric Co. v. Anaconda American Brass Co., 47 F.R.D. 557 (E.D.Pa.1969)


32.    Defendants owe trebles for three times the amount for plaintiff injury.  Defendants are liable for damages

24

## FIFTH CAUSE OF ACTION

### (Violation of the Clayton Act 16)

33.     Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

34.     Defendant Microsoft Inc. and Shareholders intended to commit Violation of Clayton Act Violation of the Clayton Act 16 is 5 U.S.C.S. § 26, authorizes "any person, firm, corporation, or association" to seek injunctive relief against threatened loss or damage by a violation of the antitrust laws. ... The Federal Trade Commission may seek a temporary injunction under the All Writs Act, 28 U.S.C.S. Defendants Microsoft Inc. and Shareholders Violation of the Clayton Act 16 was to owe Mr. Davis injunctive relief for loss or damage by the violation of antitrust laws for intentional restraint of commerce and unfair trade practices violation of civil rights from the unfair treatment Mr. Davis was subjected to racist computer program coded into Mr. Davis traffic to Mr. Davis and should receive treble damages as far as the injustice. Therefore, defendants Microsoft Inc. and Shareholders is liable for Violation of the Clayton Act 16.

35.     Damages owe trebles for three times the amount for plaintiff injury. Defendants are liable for damages.

## SIXTH CAUSE OF ACTION

### (Elements of the Offense Section 1 of the Sherman Act 15 U.S.C. Section 1)

36.     Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

37.     Defendants Microsoft Inc. and Shareholders intended to commit Elements of the Offense Section 1 of the Sherman Act 15 U.S.C. Section 1. Elements of the Offense Section 1 of the Sherman Act 15 U.S.C. Section 1 is Every contract, combination in the form of trust or

otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal

Including:

To establish a criminal violation of Section 1 of the Sherman Act (15 U.S.C. § 1), the government must prove three essential elements:

A. The charged conspiracy was knowingly formed and was in existence at or about the time alleged;

B. The defendant knowingly joined the charged conspiracy; and

C. The charged conspiracy either substantially affected interstate or foreign commerce or occurred within the flow of interstate or foreign commerce.

Defendants Microsoft Inc. and Shareholders Elements of the Offense Section 1 of the Sherman Act U.S.C. Section 1 was a (A) knowing joined and charged conspiracy was which both The Infragard and other companies and a high tech matrix colluded to restrain commerce by using their software program as a spy tool and a bulling machine that cause mental and psychological, and using and coding its data to drive racist commentary and pictures even algorithm which is computer generated or human injected (B) both knowingly joined the charged conspiracy to receive kickback money and money laudering worldwide operation (C). The charged conspiracy either substantially affected intrastate, interstate and foreign commerce or occurred within the flow of interstate or foreign commerce was an affective tool for interfering with commerce and it prejudice customers and harras them not allowing freedoms and enjoyments within commerce resulted in damages and Mr. Davis injury . Therefore, defendants Microsoft Inc. and

Shareholders is liable for Elements of the Offense Section 1 of the Sherman Act 15 U.S.C. Section 1.

38.    Defendants owe trebles for three times the amount for plaintiff injury. Defendants are liable for damages.

## SEVENTH CAUSE OF ACTION
### (Violation of the Sherman Act I)

39.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

40.    Defendants Microsoft Inc. and Shareholders intended to commit Violation of the Sherman Act I. See [1] Violation of the Sherman Act I is Only "unreasonable" restraint of trade through acquisitions, mergers, exclusionary tactics, and predatory pricing constitute a violation of the Sherman Act. This interpretation allowed large firms considerably more latitude. DefendantI was the illegal mergers of many companies on the horizontal and Microsoft and Shareholders was the hub that held all the the spokes up in the tire to roll worldwide in a cartel mafia of high tech harassment, imprisonment and Mr. Davis being one of several persons in similar situation that's being controlled by the illegal behavior of Microsoft control of the commerce and it to big to fail disposition dictated by its treatment and misrepresentation to the US government and Mr. Davis resulted in injury to Mr. Davis in the process. Therefore, defendants Microsoft Inc. and Shareholders is liable for Violation of the Sherman Act I.

[1] United States v. AT&T 552 F. Supp. 131 (D. D.C 1982.

41.    Defendants owe trebles for three times the amount for plaintiff injury. Defendants are liable for damages.

27

## EIGHTH CAUSE OF ACTION

### (Violation of the Sherman Act II)

42.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

43.    Defendants Microsoft Inc. and Shareholders intended to commit Violation of the Sherman Act II. See [1][2] Violation of the Sherman Act II makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations."1 The text of this prohibition has not changed since it was enacted in 1890. Defendants Microsoft Inc. and Shareholders Violation of the Sherman Act was the illegal formation via its software program in which many companies use including the Infragard Microsoft collaborated with the Infragard and drove traffic via its severs, satellites and other technologies to for a matrix prison of data and control and within the information was Mr. Davis subjected to its imprisonment will agents use Mr. Davis as the front of their illegal operation of mafia control to order lucrative kickbacks, bribes and money laundering around the world carried by satellite wire, radio, digital cloud commercial airlines and satellites to persons and offshore accounts and wireless payments across the country all held up by Microsoft Windows and their own hacker teams violated commerce resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of Violation of the Sherman Act II.

[1] Verizon v. Trinko, 540 U.S. 398 (2004)

[2] Standard Oil Co. of New Jersey v. United States, 221 U.S. 1 (1911)

 Standard Oil was dismantled into geographical entities given its size, and that it was too much of a monoply.

44.     Defendants owe trebles for three times the amount for plaintiff injury.  Defendants are

liable for damages.

## NINTH CAUSE OF ACTION

### ( Violation of the Travel Act 18 U. S. C. Section 1952)

45.     Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

46.     Defendants Microsoft Inc. and Shareholders intended to commit Travel Act. See

[1][2][3]  Travel Act is one of several federal laws that criminalize business activities that are

illegal at the state level. Specifically, the Travel Act makes it a federal offense to travel from

state to state (or internationally) with the intent to promote or facilitate an unlawful activity

including other elements including:

1)

A. travels in interstate or foreign commerce, or

B. uses any facility in interstate or foreign commerce, or

C. uses the mail

2. with intent:

29

A. to distribute the proceeds of an unlawful activity, i.e., i. any business enterprise involving unlawful activities gambling, moonshining, drug dealing, or prostitution; or ii. extortion, bribery, or arson; or iii. any act which is indictable as money laundering; or

B. commit an act of violence to further an unlawful activity; or

C. to otherwise

i. promote,

ii. manage,

iii. establish,

iv. carry on, or

v. facilitate the promotion, management, establishment, or carrying on

any unlawful activity; and

3. thereafter

A. distributes or attempts to distribute such proceeds, or

B. commits or attempts to commit such act of violence, or

C. promotes, manages, establishes, carries on, or facilitates the promotion, management, establishment, or carrying on such unlawful activities or attempts to do so.

Defendants Microsoft Inc. and Shareholders violation of the Travel Act was taking of Mr. Davis software and hacking recoding software to be broadcast all around the world where everyone can see into your house remotely invading your space and privacy and get paid for the monitoring and Mr. Davis is one of several persons imprisoned by this money making scheme resulted in damages and Mr. Davis injury. Therefore, defendants is liable for the Violation of the Travel Act.

[1] United States v. Pomponio 511 F.2d 953 (4th Cir. 1975)

[2] Perrin v. United States, 444 U.S. 37 (1979)

[3] United States v. Nardello, 393 U. S. 286

47.    Defendant owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TENTH CAUSE OF ACTION

### (Violation of the Necessary and Proper Clause)

48.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

49.    Defendants  Microsoft Inc. and Shareholders intended to commit Violation of the Necessary and Proper Clause. See [1] Violation of the Necessary and Proper Clause is The Congress shall have Power. To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.  Defendant Microsoft Inc. and Shareholders Necessary and Proper Clause was substation of Congressional Powers and created its own style of power due to its companies behemoth of size and influence up to the highest level and even reaches the lowest levels where Mr. Davis was a subject to its contral and manipulation  resulted in damages and Injury to Mr. Davis.  Therefore, defendants Microsoft Inc. and Shareholders is  liable of Violation of the Necessary and Proper Clause.

[1] McCulloch v. Maryland (1819)

50.    Defendants owe in an amount that exceeds 75,000 for plaintiff injury.  Defendants are liable for damages.

## ELEVENTH CAUSE OF ACTION
### (Violation of Congress Enumerated Powers of the Federal Constitution)
( Article I, Section 8 of the United States Constitution)

51.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

52.    Defendants Microsoft Inc. and Shareholders  intended to commit Violation of Congress Enumerated Powers of the Federal Constitution. See [1] Violation of Congress Enumerated

32

Powers of the Federal Constitution is the enumerated powers (also called expressed powers, explicit powers or delegated powers) of the United States Congress are the powers granted to the federal government of the United States. Most of these powers are listed in Article I, Section 8 of the United States Constitution and is:

1)    The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

2)   To borrow on the credit of the United States;

3)   To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

4)   To establish a uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

5)   To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

33

6) To provide for the Punishment of counterfeiting the Securities and current Coin of the United States;

7) To establish Post Offices and Post Roads;

8) To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

9) To constitute Tribunals inferior to the supreme Court;

10) To define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations;

11) To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

12) To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

13) To provide and maintain a Navy;

14) To make Rules for the Government and Regulation of the land and naval Forces;

15) To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

16) To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

17) To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; And

18) To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

Defendants violation rule(1), (2) and (18) carry out Powers vested by the Constitution and knowingly participating in bribery and kickbacks and money making rules and laws undermining Powers of the Constitution and the rule making of Congress laundering money and not paying taxes on such monies while violating Mr. Davis rights regulating its own quasi-commerce operation resulted in damage and injury to Mr. Davis. Therefore, defendant Microsoft Inc. and Shareholders is liable of Violation of Congress Enumerated Powers of the Federal Constitution.

[1] Gibbons v. Ogden (1824).

53.     Defendants owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TWELFTH CAUSE OF ACTION
### (Violation of the Commerce Clause Article I, Section 8, Clause 3)

54.     Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

55.     Defendants Microsoft Inc. and Shareholders intended to commit Violation of the Commerce Clause. Violation of the Commerce Clause is Constitution that empowers Congress to regulate interstate commerce and commerce with foreign countries and that forms the constitutional basis for much federal regulation and to violate it violate the empowered position of Congress whom regulate it. [1] Defendants Microsoft Inc. and Shareholders Violation of the Commerce Clause was the undermining and taking over the empowered position of Congress to make laws was a total violation of the law resulted in damage and injury to Mr. Davis.

Therefore, defendants Microsoft Inc. and Shareholders liable of Violation of the Commerce Clause.

[1] Wickard v. Filburn, 317 U.S. 111 (1942).

56.    Defendants owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## THIRTEENTH CAUSE OF ACTION
### ( Laundering of monetary instruments 18 U.S.C 1956)

57.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

58.    Defendants Microsoft Inc. and Shareholders intended to commit laundering of monetary instruments. Laundering of monetary instruments is

(a)

(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)

(i) with the intent to promote the carrying on of specified unlawful activity; or

(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

37

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property

involved in the transaction, whichever is greater, or imprisonment for not more than twenty

years, or both. For purposes of this paragraph, a financial transaction shall be considered to be

one involving the proceeds of specified unlawful activity if it is part of a set of parallel or

dependent transactions, any one of which involves the proceeds of specified unlawful activity,

and all of which are part of a single plan or arrangement.

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a

monetary instrument or funds from a place in the United States to or through a place outside the

United States or to a place in the United States from or through a place outside the United

States—

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the monetary instrument or funds involved in the transportation, transmission,

or transfer represent the proceeds of some form of unlawful activity and knowing that such

transportation, transmission, or transfer is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the

proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary

instrument or funds involved in the transportation, transmission, or transfer, whichever is greater,

or imprisonment for not more than twenty years, or both. For the purpose of the offense

described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

(3) Whoever, with the intent—

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

(b) Penalties.—

(1) In general.—Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or section 1957, or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of—

(A) the value of the property, funds, or monetary instruments involved in the transaction; or

(B) $10,000.

(2) Jurisdiction over foreign persons.—For purposes of adjudicating an action filed or enforcing a penalty ordered under this section, the district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and—

(A) the foreign person commits an offense under subsection (a) involving a financial transaction that occurs in whole or in part in the United States;

(B) the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of forfeiture by a court of the United States; or

(C) the foreign person is a financial institution that maintains a bank account at a financial institution in the United States.

(3) Court authority over assets.—

A court may issue a pretrial restraining order or take any other action necessary to ensure that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section.

(4) Federal receiver.—

(A) In general.—

A court may appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and possession of all assets of the defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982, or a criminal sentence under section 1957 or subsection (a) of this section, including an order of restitution to any victim of a specified unlawful activity.

(B) Appointment and authority.—A Federal Receiver described in subparagraph (A)—

(i) may be appointed upon application of a Federal prosecutor or a Federal or State regulator, by the court having jurisdiction over the defendant in the case;

(ii) shall be an officer of the court, and the powers of the Federal Receiver shall include the powers set out in section 754 of title 28, United States Code; and

(iii) shall have standing equivalent to that of a Federal prosecutor for the purpose of submitting requests to obtain information regarding the assets of the defendant—

(I) from the Financial Crimes Enforcement Network of the Department of the Treasury; or

(II) from a foreign country pursuant to a mutual legal assistance treaty, multilateral agreement, or other arrangement for international law enforcement assistance, provided that such requests are in accordance with the policies and procedures of the Attorney General.

(c) As used in this section—

(1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of

activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

(2) the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction;

(3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

(4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

(5) the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery;

(6) the term "financial institution" includes—

(A) any financial institution, as defined in section 5312(a)(2) of title 31, United States Code, or the regulations promulgated thereunder; and

(B) any foreign bank, as defined in section 1 of the International Banking Act of 1978 (12 U.S.C. 3101);

(7) the term "specified unlawful activity" means—

(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;

(B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—

(i) the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);

(ii) murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

(iii) fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978)); [1]

(iv) bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;

(v) smuggling or export control violations involving—

(I) an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or

(II) an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730–774);

(vi) an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States; or

(vii) trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;

(C) any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act (21 U.S.C. 848);

(D) an offense under section 32 (relating to the destruction of aircraft), section 37 (relating to violence at international airports), section 115 (relating to influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), section 152 (relating to concealment of assets; false oaths and claims; bribery), section 175c (relating to the variola virus), section 215 (relating to commissions or gifts for procuring loans), section 351 (relating to congressional or Cabinet officer assassination), any of sections 500 through 503 (relating to certain counterfeiting offenses), section 513 (relating to securities of States and private entities), section 541 (relating to goods falsely classified), section 542 (relating to entry of goods by means of false statements), section 545 (relating to smuggling goods into the United States), section 549 (relating to removing goods from Customs custody), section 554 (relating to smuggling goods from the United States), section 555 (relating to border tunnels), section 641 (relating to public money, property, or records), section 656 (relating to theft, embezzlement, or misapplication by bank officer or employee), section 657 (relating to lending, credit, and insurance institutions),

section 658 (relating to property mortgaged or pledged to farm credit agencies), section 666 (relating to theft or bribery concerning programs receiving Federal funds), section 793, 794, or 798 (relating to espionage), section 831 (relating to prohibited transactions involving nuclear materials), section 844(f) or (i) (relating to destruction by explosives or fire of Government property or property affecting interstate or foreign commerce), section 875 (relating to interstate communications), section 922(l) (relating to the unlawful importation of firearms), section 924(n) (relating to firearms trafficking), section 956 (relating to conspiracy to kill, kidnap, maim, or injure certain property in a foreign country), section 1005 (relating to fraudulent bank entries), 1006 [2] (relating to fraudulent Federal credit institution entries), 1007 [2] (relating to Federal Deposit Insurance transactions), 1014 [2] (relating to fraudulent loan or credit applications), section 1030 (relating to computer fraud and abuse), 1032 [2] (relating to concealment of assets from conservator, receiver, or liquidating agent of financial institution), section 1111 (relating to murder), section 1114 (relating to murder of United States law enforcement officials), section 1116 (relating to murder of foreign officials, official guests, or internationally protected persons), section 1201 (relating to kidnaping), section 1203 (relating to hostage taking), section 1361 (relating to willful injury of Government property), section 1363 (relating to destruction of property within the special maritime and territorial jurisdiction), section 1708 (theft from the mail), section 1751 (relating to Presidential assassination), section 2113 or 2114 (relating to bank and postal robbery and theft), section 2252A (relating to child pornography) where the child pornography contains a visual depiction of an actual minor engaging in sexually explicit conduct, section 2260 (production of certain child pornography for importation into the United States), section 2280 (relating to violence against maritime navigation), section 2281 (relating to violence against maritime fixed platforms), section 2319 (relating to copyright infringement),

section 2320 (relating to trafficking in counterfeit goods and services), section 2332 (relating to terrorist acts abroad against United States nationals), section 2332a (relating to use of weapons of mass destruction), section 2332b (relating to international terrorist acts transcending national boundaries), section 2332g (relating to missile systems designed to destroy aircraft), section 2332h (relating to radiological dispersal devices), section 2339A or 2339B (relating to providing material support to terrorists), section 2339C (relating to financing of terrorism), or section 2339D (relating to receiving military-type training from a foreign terrorist organization) of this title, section 46502 of title 49, United States Code, a felony violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals), section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the Controlled Substances Act (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal violations) of the Arms Export Control Act, section 11 [3] (relating to violations) of the Export Administration Act of 1979, section 206 (relating to penalties) of the International Emergency Economic Powers Act, section 16 (relating to offenses and punishment) of the Trading with the Enemy Act, any felony violation of section 15 of the Food and Nutrition Act of 2008 (relating to supplemental nutrition assistance program benefits fraud) involving a quantity of benefits having a value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938, any felony violation of the Foreign Corrupt Practices Act, section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122) (relating to prohibitions governing atomic weapons), or section 104(a) of the North Korea Sanctions Enforcement Act of 2016 [3] (relating to prohibited activities with respect to North Korea);

environmental crimes

(E) a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act (33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.);

(F) any act or activity constituting an offense involving a Federal health care offense; or

(G) any act that is a criminal violation of subparagraph (A), (B), (C), (D), (E), or (F) of paragraph (1) of section 9(a) of the Endangered Species Act of 1973 (16 U.S.C. 1538(a)(1)), section 2203 of the African Elephant Conservation Act (16 U.S.C. 4223), or section 7(a) of the Rhinoceros and Tiger Conservation Act of 1994 (16 U.S.C. 5305a(a)), if the endangered or threatened species of fish or wildlife, products, items, or substances involved in the violation and relevant conduct, as applicable, have a total value of more than $10,000;

(8) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(9) the term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

(d) Nothing in this section shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this section.

(e) Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and,

with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General. Violations of this section involving offenses described in paragraph (c)(7)(E) may be investigated by such components of the Department of Justice as the Attorney General may direct, and the National Enforcement Investigations Center of the Environmental Protection Agency.

(f) There is extraterritorial jurisdiction over the conduct prohibited by this section if—

(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

(g) Notice of Conviction of Financial Institutions.—

If any financial institution or any officer, director, or employee of any financial institution has been found guilty of an offense under this section, section 1957 or 1960 of this title, or section 5322 or 5324 of title 31, the Attorney General shall provide written notice of such fact to the appropriate regulatory agency for the financial institution.

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(i) Venue.—

(1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—

(A) any district in which the financial or monetary transaction is conducted; or

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

(2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

(3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.

Defendants Microsoft Inc. and Shareholders using its software and technologies gave life to this illegal operation  was a part of a mulita district money laundering scheme to be involved in illegal money laundering and kickback schemes with the ultimate goal to take from the government through wire across interstate lines  to take from the US government clean the monies overseas and reinvest the money around the world a using Mr. Davis and others in similar situations as stepping stones to their ultimate plan resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of Laundering of monetary instruments.

59.    Defendants owe in an amount that exceeds 75,000 for plaintiff injury.  Defendants are liable for damages.

## FOURTEENTH CAUSE OF ACTION

## ( Engaging in monetary transactions in property derived from specified unlawful activity) (18 U.S.C 1957)

60.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

61.    Defendants Microsoft Inc. and Shareholders intended to commit engaging in monetary transactions in property derived from specified unlawful activity laundering of monetary instruments.  Engaging in monetary transactions in property derived from specified unlawful activity laundering of monetary instruments is Defendant charged with knowingly engaging or attempting to engage in a monetary transaction involving more than $10,000 of criminally derived property.  Defendants Microsoft Inc. and Shareholders unlawful activity participating. in a worldwide kickback an money laundering scheme using Microsoft programs and backdoors in the programs to funnel monies thru data and using Mr. Davis a the true source of their income by making him look like he committed a crime when in actual the crime is being submitted by Mr. Davis captors Microsoft Windows. Therefore, defendants Microsoft Inc. and Shareholders is liable of engaging in monetary transactions in property derived from specified unlawful activity.

62.    Defendants owe in an amount that exceeds 75,000 for plaintiff injury.  Defendants are liable for damages.

## FIFTEENTH CAUSE OF ACTION
### (Negligent Supervision)

50

63.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

64.    Defendants Microsoft Inc. and Shareholders intended to commit negligent supervision. Negligent supervision is when someone who has a legal responsibility to supervise others fails to do so in a responsible manner. Defendants Microsoft Inc. and Shareholders negligent supervision was allowing their employees hack teams to come and control and recreate programs control flow of data and share it with other companies without Mr. Davis permission resulted in Mr. Davis damages and injury Mr. Davis. Therefore, defendant Microsoft Inc. and Shareholders is liable for Negligent Supervision.

65.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

66.    Defendants Microsoft Inc. and Shareholders intended to commit the defendant had a duty to supervise the harming party. The defendant had a duty to supervise the harming party is supervisors had a duty of care towards another. Defendants Microsoft Inc. and Shareholders the defendant had a duty to supervise the harming party was the supervisor responsibility and it did not occur not once at anytime resulting in Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable for the defendant had a duty to supervise the harming party.

67.    Damages owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

68.    Defendants Microsoft Inc. and Shareholders intended to commit the defendant negligently supervised the harming party. The defendant negligently supervised the harming party is supervisor that not thoroughly supervising and delegating authority throughout the operation. Defendants Microsoft Inc. and Shareholders was negligent and infrequent with

51

supervision of their employees actions to cause harm to Mr. Davis even when all Microsoft employees knew or should have known of the injustice towards Mr. Davi resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable for the defendant negligently supervised the harming party.

69. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

70. Defendants Microsoft Inc. and Shareholders intended to commit such negligence proximately cause the. Such negligence proximately caused the is that the injury was cause by the actual person direct or immediate. Defendants Microsoft Inc. and Shareholders such negligence proximately caused the was direct and immediate actions of Microsoft and its employees intentional behaviors was in order to receive illegal monies via kickbacks in there huge underground money laundering campaign resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable for such negligence proximately caused the.

71. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## SIXTEENTH CAUSE OF ACTION
### (Negligent Hiring)

72. Plaintiff realleage and incorporate by reference all of the preceding paragraphs.

73. Defendants Microsoft Inc. and Shareholders intended to commit negligent hiring. Negligent Hiring is a legal claim made against an employer. The negligent hiring claim argues that the employer knew or should have known their history before hiring them. Basically, if you

are not diligent about finding out a candidate's background, you could be responsible for their actions. Defendants Microsoft Inc. and Shareholders negligent hiring was hiring persons who took advantage of Mr. Davis due to the company training these employees on the kickback bounus against Mr. Davis during their illegal investigation. Therefore, defendants Microsoft Inc. and Shareholders liable for negligent hiring.

74. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

75. Defendants Microsoft Inc. and Shareholders intended to commit that the employer owed the injured party (plaintiff) a duty of care. That the employer owed the injured party (plaintiff) a duty of care is a requirement that a person act toward others and the public with the watchfulness, attention, caution and prudence that a reasonable person in the circumstances would use. If a person's actions do not meet this standard of care, then the acts are considered negligent, and any damages resulting may be claimed in a lawsuit for negligence. Defendants Microsoft Inc. and Shareholders reasonable duty of car was not to first think about the duty owed to Mr. Davis but instead think of the huge lucrative monies they would receive from such actions committed to harm Mr. Davis resulted in damages and injury to Mr. Davis, Therefore, defendants Microsoft Inc. and Shareholders is liable fot the employer owed the injured party (plaintiff) a duty of care.

76. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

77. Defendants Microsoft Inc. and Shareholders intended to commit the injury to the plaintiff was reasonably foreseeable. The injury to the plaintiff was reasonably foreseeable is

53

The foreseeability test basically asks whether the person causing the injury should have reasonably foreseen the general consequences that would result because of his or her conduct. Defendants Microsoft Inc. and Shareholders the injury to the plaintiff was reasonably foreseeable and could have been prevented but for Microsoft and shareholders greed and ruthlessness Mr. Davis thought resulted in Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of the injury to the plaintiff was reasonably foreseeable.

78.   Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## SEVENTEENTH CAUSE OF ACTION
### (Anti kickback act of 1986 41 U.S.C. - Section 51)

79.   Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

80.   Defendants Microsoft Inc. and Shareholders intended to commit Anti-kickback Act. [1] Anti-kickback act is that the purpose of the kickback was for improperly obtaining or rewarding favorable treatment.. Covered class of "kickback" recipients--The Act prohibits "kickbacks" to prime contractors, prime contractor employees, subcontractors, and subcontractor employees. The Anti-Kickback Act of 1986, 41 U.S.C. § 51 et seq., modernized and closed the loopholes of previous statutes applying to government contractors. The 1986 law attempts to make the anti-kickback statute a more useful prosecutorial tool by expanding the definition of prohibited conduct and by making the statute applicable to a broader range of persons involved in government subcontracting. Prosecutions under these statutes must establish the following:

1.   Prohibited conduct--the Act prohibits attempted as well as completed "kickbacks," which include any money, fees, commission, credit, gift, gratuity, thing of value, or compensation of

any kind. The act also provides that the inclusion of kickback amounts in contract prices is prohibited conduct in itself.

2. Purpose of kickback--The Act requires that the purpose of the kickback was for improperly obtaining or rewarding favorable treatment. It is intended to embrace the full range of government contracting. Prior to 1986, the "kickback" was required to be for the inducement or acknowledgement of a subcontract.

3. Covered class of "kickback" recipients--The Act prohibits "kickbacks" to prime contractors, prime contractor employees, subcontractors, and subcontractor employees. These terms are defined in the Act.

4. Type of contract--The Act defines kickbacks to include payments under any government contract. Prior to this legislation, the statutes' applicability was limited to negotiated contracts.

5. Knowledge and willfulness--The Act requires one to knowingly and willfully engage in the prohibited conduct for the imposition of criminal sanctions.

Defendants Microsoft Inc. and Shareholders Anti-kickback act was the illegal colluding of Microsoft and numerous companies around the world committing bribes and kickbacks fund unbeknownst to the US government for their illegal activities resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable for anti-kickback.

[1] United States ex rel. Moilan v. McAllen Hospitals, L.P., et al., Case No. M-05-CV-263 S.D. Tex.200

81. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## EIGHTEENTH CAUSE OF ACTION

### (18 U.S. Code § 1951 - Interference with commerce by threats or violence)

82. Plaintiff realleges and incorporate by reference all of the preceding paragraphs.

83. Defendants Microsoft Inc. and Shareholders intended to commit Interference with commerce by threats or violence. Interference with commerce by threats or violence is:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section—

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

Defendants Microsoft Inc. and Shareholders interference with commerce by threats or violence over the internet using force algorithms inducing bullyin g and harassing behaviors pictures of black men being hung and confederate flags with klan meetings I could not take off and using force threats like im going to kill you in order to control was Mr. Davis while on the computer resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable for Interference with commerce by threats or violence.

84.     Defendants damages owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages

## NINTEENTH  CAUSE OF ACTION
### (Theft or bribery concerning programs receiving Federal funds)
### (18 U. S. section 666)

85.     Plaintiff realleged and incorporate by reference all of the preceding paragraphs.

86.     Defendants Microsoft Inc. and Shareholders  intended to commit theft or bribery concerning programs receiving Federal funds. [1] enacted in 1984 to extend the reach of federal bribery law beyond federal officials, witnesses and jurors, to employees of private firms that receive federal money. Section 666 makes it a crime for a person to give or accept something of value 'in connection with [a] business', if the 'the entity for which the defendant acted as an

agent received more than $10,000 a year in federal assistance'. Theft or bribery concerning programs receiving Federal funds is The purpose of this statute is protect the integrity of the vast sums of money distributed through federal programs including:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; or

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

(d) As used in this section—

(1) the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative;

(2) the term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program;

(3) the term "local" means of or pertaining to a political subdivision within a State;

(4) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(5) the term "in any one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months

after the commission of the offense. Such period may include time both before and after the commission of the offense.

Defendants Microsoft Inc. and Shareholders was participating in the scheme to receive government funds from a government contract and was accepting government monies from the kickback and bribes that spreads around the world in a multi district scheme resulting in damages and injury to Mr. Davis  Therefore, defendants Microsoft Inc. and Shareholders was liable of Theft or bribery concerning programs receiving Federal funds.

[1]  Dixson v. United States, 465 U.S. 482 (1984)

87.  Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH CAUSE OF ACTION
### (Hobbs Act)
### (18 USC § 1951)

88.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

89.    Defendants Microsoft Inc. and Shareholders  intended to commit Hobbs Act. See [1][2]  Hobbs Act is enacted in 1946, as an amendment to the 1934 Anti-Racketeering Act. Although the Act was originally intended to combat racketeering in labour-management disputes, the statute has frequently been used in connection with cases involving public corruption and commercial disputes. The Act criminalizes three distinct forms of criminal conduct: (1) robbery; (2) extortion by force, threat or fear; and (3) extortion under colour of official right. Only the third is relevant here. Extortion under colour of official right consists in the offender's use of his official position to extract something of a value from the alleged victim —understood, essentially, as the taking of a bribe. It is punishable by up to twenty years in prison.

60

Proof of "racketeering" as an element of Hobbs Act offenses is not required. Defendants Microsoft Inc. and Shareholders was subjecting Mr. Davis to the abuse making and harassment to used as a cover to exhort money from the US government resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of the Hobbs Act.

[1] Evans v. United States, 504 U.S. 255, 265, 112 S. Ct. 1181, 1188 (1992)

[2] United States v. Culbert, 435 U.S. 371, 98 S. Ct. 1112 (1978)

90.     Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH FIRST CAUSE OF ACTION

### (Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961) 1961)

91.     Plaintiff realleal and incorporate by reference all of the preceding paragraphs.

92.     Defendant   Microsoft Inc. and Shareholders intended to commit Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961) 1961. [1][2][3]  Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961) 1961 is a United States federal law that provides for extended criminal penalties and a civil Microsoft Inc. and Shareholders cause of action for acts performed as part of an ongoing criminal organization. Defendants  Racketeer Influenced and Corrupt Organizations (RICO) was  ongoing criminal cartel and Microsoft was in charge of its networks and software to communicated and they receive a cut from such actions to steal from US government and Mr. Davis resulted in Mr.

Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of Racketeer

Influenced and Corrupt Organizations (RICO).

[1] United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1118 (D.C. Cir. 2009)

[2] Rivera v. State of New York, 34 NY 3d 383 (2019)

[3]   S.P.R.L. v. Imrex Co., Inc.,473 U.S. 479, 495 (1985) (stating that § 1962 makes it illegal for a person "to

use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an

enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering

activity").

93.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury.

Defendants are liable for damages.

## TWENTIETH SECOND  CAUSE OF ACTION

### (15 U.S. Code § 78dd–1 - Prohibited foreign trade practices by issuers)

(The FCPA covers U.S. and foreign public companies listed on a U.S. stock exchange       issuers)

94.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

95.    Defendants Microsoft Inc. and Shareholders intended to commit 15 U.S. Code § 78dd–1 -

Prohibited foreign trade practices by issuers.  15 U.S. Code § 78dd–1 - Prohibited foreign trade

practices by issuers is:

(a) Prohibition It shall be unlawful for any issuer which has a class of securities registered

pursuant to section 78l of this title or which is required to file reports under section 78o(d) of this

title, or for any officer, director, employee, or agent of such issuer or any stockholder thereof

62

acting on behalf of such issuer, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

(1) any foreign official for purposes of—

(A)

(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person;

(2) any foreign political party or official thereof or any candidate for foreign political office for purposes of—

(A)

(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person; or

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office, for purposes of—

(A)

(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person.

(b) Exception for routine governmental action

Subsections (a) and (g) shall not apply to any facilitating or expediting payment to a foreign official, political party, or party official the purpose of which is to expedite or to secure the performance of a routine governmental action by a foreign official, political party, or party official.

(c) Affirmative defenses It shall be an affirmative defense to actions under subsection (a) or (g) that—

(1) the payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the foreign official's, political party's, party official's, or candidate's country; or

(2) the payment, gift, offer, or promise of anything of value that was made, was a reasonable and bona fide expenditure, such as travel and lodging expenses, incurred by or on behalf of a foreign official, party, party official, or candidate and was directly related to—

(A) the promotion, demonstration, or explanation of products or services; or

(B) the execution or performance of a contract with a foreign government or agency thereof.

(d) Guidelines by Attorney General Not later than one year after August 23, 1988, the Attorney General, after consultation with the Commission, the Secretary of Commerce, the United States Trade Representative, the Secretary of State, and the Secretary of the Treasury, and after obtaining the views of all interested persons through public notice and comment procedures, shall determine to what extent compliance with this section would be enhanced and the business community would be assisted by further clarification of the preceding provisions of this section and may, based on such determination and to the extent necessary and appropriate, issue—

65

(1) guidelines describing specific types of conduct, associated with common types of export sales arrangements and business contracts, which for purposes of the Department of Justice's present enforcement policy, the Attorney General determines would be in conformance with the preceding provisions of this section; and

(2) general precautionary procedures which issuers may use on a voluntary basis to conform their conduct to the Department of Justice's present enforcement policy regarding the preceding provisions of this section.

The Attorney General shall issue the guidelines and procedures referred to in the preceding sentence in accordance with the provisions of subchapter II of chapter 5 of title 5 and those guidelines and procedures shall be subject to the provisions of chapter 7 of that title.

(e) Opinions of Attorney General

(1) The Attorney General, after consultation with appropriate departments and agencies of the United States and after obtaining the views of all interested persons through public notice and comment procedures, shall establish a procedure to provide responses to specific inquiries by issuers concerning conformance of their conduct with the Department of Justice's present enforcement policy regarding the preceding provisions of this section. The Attorney General shall, within 30 days after receiving such a request, issue an opinion in response to that request. The opinion shall state whether or not certain specified prospective conduct would, for purposes of the Department of Justice's present enforcement policy, violate the preceding provisions of this section. Additional requests for opinions may be filed with the Attorney General regarding other specified prospective conduct that is beyond the scope of conduct specified in previous requests. In any action brought under the applicable provisions of this section, there shall be a

rebuttable presumption that conduct, which is specified in a request by an issuer and for which the Attorney General has issued an opinion that such conduct is in conformity with the Department of Justice's present enforcement policy, is in compliance with the preceding provisions of this section. Such a presumption may be rebutted by a preponderance of the evidence. In considering the presumption for purposes of this paragraph, a court shall weigh all relevant factors, including but not limited to whether the information submitted to the Attorney General was accurate and complete and whether it was within the scope of the conduct specified in any request received by the Attorney General. The Attorney General shall establish the procedure required by this paragraph in accordance with the provisions of subchapter II of chapter 5 of title 5 and that procedure shall be subject to the provisions of chapter 7 of that title.

(2) Any document or other material which is provided to, received by, or prepared in the Department of Justice or any other department or agency of the United States in connection with a request by an issuer under the procedure established under paragraph (1), shall be exempt from disclosure under section 552 of title 5 and shall not, except with the consent of the issuer, be made publicly available, regardless of whether the Attorney General responds to such a request or the issuer withdraws such request before receiving a response.

(3) Any issuer who has made a request to the Attorney General under paragraph (1) may withdraw such request prior to the time the Attorney General issues an opinion in response to such request. Any request so withdrawn shall have no force or effect.

(4) The Attorney General shall, to the maximum extent practicable, provide timely guidance concerning the Department of Justice's present enforcement policy with respect to the preceding provisions of this section to potential exporters and small businesses that are unable to obtain specialized counsel on issues pertaining to such provisions. Such guidance shall be limited to

67

responses to requests under paragraph (1) concerning conformity of specified prospective conduct with the Department of Justice's present enforcement policy regarding the preceding provisions of this section and general explanations of compliance responsibilities and of potential liabilities under the preceding provisions of this section.

(f) Definitions For purposes of this section:

(1)

(A) The term "foreign official" means any officer or employee of a foreign government or any department, agency, or instrumentality thereof, or of a public international organization, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality, or for or on behalf of any such public international organization.

(B) For purposes of subparagraph (A), the term "public international organization" means—

(i) an organization that is designated by Executive order pursuant to section 288 of title 22; or

(ii) any other international organization that is designated by the President by Executive order for the purposes of this section, effective as of the date of publication of such order in the Federal Register.

(2)

(A) A person's state of mind is "knowing" with respect to conduct, a circumstance, or a result if—

(i) such person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or

(ii) such person has a firm belief that such circumstance exists or that such result is substantially certain to occur.

(B) When knowledge of the existence of a particular circumstance is required for an offense, such knowledge is established if a person is aware of a high probability of the existence of such circumstance, unless the person actually believes that such circumstance does not exist.

(3)

(A) The term "routine governmental action" means only an action which is ordinarily and commonly performed by a foreign official in—

(i) obtaining permits, licenses, or other official documents to qualify a person to do business in a foreign country;

(ii) processing governmental papers, such as visas and work orders;

(iii) providing police protection, mail pick-up and delivery, or scheduling inspections associated with contract performance or inspections related to transit of goods across country;

(iv) providing phone service, power and water supply, loading and unloading cargo, or protecting perishable products or commodities from deterioration; or

(v) actions of a similar nature.

(B) The term "routine governmental action" does not include any decision by a foreign official whether, or on what terms, to award new business to or to continue business with a particular party, or any action taken by a foreign official involved in the decision making process to encourage a decision to award new business to or continue business with a particular party.

(g) Alternative jurisdiction

69

(1) It shall also be unlawful for any issuer organized under the laws of the United States, or a State, territory, possession, or commonwealth of the United States or a political subdivision thereof and which has a class of securities registered pursuant to section 78l of this title or which is required to file reports under section 78o(d) of this title, or for any United States person that is an officer, director, employee, or agent of such issuer or a stockholder thereof acting on behalf of such issuer, to corruptly do any act outside the United States in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to any of the persons or entities set forth in paragraphs (1), (2), and (3) of subsection (a) of this section for the purposes set forth therein, irrespective of whether such issuer or such officer, director, employee, agent, or stockholder makes use of the mails or any means or instrumentality of interstate commerce in furtherance of such offer, gift, payment, promise, or authorization.

(2) As used in this subsection, the term "United States person" means a national of the United States (as defined in section 1101 of title 8) or any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship organized under the laws of the United States or any State, territory, possession, or commonwealth of the United States, or any political subdivision thereof.

Defendants Microsoft Inc. and Shareholders 15 U.S. Code § 78dd–1 - Prohibited foreign trade practices by issuers was used influencing and inducing foreign officials and at the time was listed on the U. S. Stock Exchange when Microsoft used its oversea connections to further the scheme to subject the government to an illegal taking to assist government agency working with for the FBI to bribe officials to increase their companies coffers and business connections and inducing

Mr. Davis to all kinds of abuse. Therefore, defendants is liable of Corporation15 U.S. Code § 78dd–1 - Prohibited foreign trade practices by issuers.

96.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH THIRD  CAUSE OF ACTION

### (15 U.S. Code § 78dd–2 Prohibited foreign trade practices by domestic concerns)

97.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

98.    Defendants Microsoft Inc. and Shareholders  intended to commit 15 U.S. Code § 78dd-2 Prohibited foreign trade practices by domestic concerns.  15 U.S. Code § 78dd-2 Prohibited foreign trade p:ractices by domestic concerns is: U.S. companies and citizens (domestic concerns is:

(a) Prohibition It shall be unlawful for any domestic concern, other than an issuer which is subject to section 78dd–1 of this title, or for any officer, director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

(1) any foreign official for purposes of—

(A)

(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person;

(2) any foreign political party or official thereof or any candidate for foreign political office for purposes of—

(A)

(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person; or

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office, for purposes of—

(A)

(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person.

(b) Exception for routine governmental action


Subsections (a) and (i) shall not apply to any facilitating or expediting payment to a foreign official, political party, or party official the purpose of which is to expedite or to secure the performance of a routine governmental action by a foreign official, political party, or party official.

(c) Affirmative defenses It shall be an affirmative defense to actions under subsection (a) or (i) that—

73

(1) the payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the foreign official's, political party's, party official's, or candidate's country; or

(2) the payment, gift, offer, or promise of anything of value that was made, was a reasonable and bona fide expenditure, such as travel and lodging expenses, incurred by or on behalf of a foreign official, party, party official, or candidate and was directly related to—

(A) the promotion, demonstration, or explanation of products or services; or

(B) the execution or performance of a contract with a foreign government or agency thereof.

(d) Injunctive relief

(1) When it appears to the Attorney General that any domestic concern to which this section applies, or officer, director, employee, agent, or stockholder thereof, is engaged, or about to engage, in any act or practice constituting a violation of subsection (a) or (i) of this section, the Attorney General may, in his discretion, bring a civil action in an appropriate district court of the United States to enjoin such act or practice, and upon a proper showing, a permanent injunction or a temporary restraining order shall be granted without bond.

(2) For the purpose of any civil investigation which, in the opinion of the Attorney General, is necessary and proper to enforce this section, the Attorney General or his designee are empowered to administer oaths and affirmations, subpoena witnesses, take evidence, and require the production of any books, papers, or other documents which the Attorney General deems relevant or material to such investigation. The attendance of witnesses and the production of documentary evidence may be required from any place in the United States, or any territory, possession, or commonwealth of the United States, at any designated place of hearing.

(3) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, or other documents. Any such court may issue an order requiring such person to appear before the Attorney General or his designee, there to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey such order of the court may be punished by such court as a contempt thereof. All process in any such case may be served in the judicial district in which such person resides or may be found. The Attorney General may make such rules relating to civil investigations as may be necessary or appropriate to implement the provisions of this subsection.

(e) Guidelines by Attorney General Not later than 6 months after August 23, 1988, the Attorney General, after consultation with the Securities and Exchange Commission, the Secretary of Commerce, the United States Trade Representative, the Secretary of State, and the Secretary of the Treasury, and after obtaining the views of all interested persons through public notice and comment procedures, shall determine to what extent compliance with this section would be enhanced and the business community would be assisted by further clarification of the preceding provisions of this section and may, based on such determination and to the extent necessary and appropriate, issue—

(1) guidelines describing specific types of conduct, associated with common types of export sales arrangements and business contracts, which for purposes of the Department of Justice's present enforcement policy, the Attorney General determines would be in conformance with the preceding provisions of this section; and

75

(2) general precautionary procedures which domestic concerns may use on a voluntary basis to conform their conduct to the Department of Justice's present enforcement policy regarding the preceding provisions of this section.

The Attorney General shall issue the guidelines and procedures referred to in the preceding sentence in accordance with the provisions of subchapter II of chapter 5 of title 5 and those guidelines and procedures shall be subject to the provisions of chapter 7 of that title.

(f) Opinions of Attorney General

(1) The Attorney General, after consultation with appropriate departments and agencies of the United States and after obtaining the views of all interested persons through public notice and comment procedures, shall establish a procedure to provide responses to specific inquiries by domestic concerns concerning conformance of their conduct with the Department of Justice's present enforcement policy regarding the preceding provisions of this section. The Attorney General shall, within 30 days after receiving such a request, issue an opinion in response to that request. The opinion shall state whether or not certain specified prospective conduct would, for purposes of the Department of Justice's present enforcement policy, violate the preceding provisions of this section. Additional requests for opinions may be filed with the Attorney General regarding other specified prospective conduct that is beyond the scope of conduct specified in previous requests. In any action brought under the applicable provisions of this section, there shall be a rebuttable presumption that conduct, which is specified in a request by a domestic concern and for which the Attorney General has issued an opinion that such conduct is in conformity with the Department of Justice's present enforcement policy, is in compliance with the preceding provisions of this section. Such a presumption may be rebutted by a preponderance of the evidence. In considering the presumption for purposes of this paragraph, a court shall

76

weigh all relevant factors, including but not limited to whether the information submitted to the Attorney General was accurate and complete and whether it was within the scope of the conduct specified in any request received by the Attorney General. The Attorney General shall establish the procedure required by this paragraph in accordance with the provisions of subchapter II of chapter 5 of title 5 and that procedure shall be subject to the provisions of chapter 7 of that title.

(2) Any document or other material which is provided to, received by, or prepared in the Department of Justice or any other department or agency of the United States in connection with a request by a domestic concern under the procedure established under paragraph (1), shall be exempt from disclosure under section 552 of title 5 and shall not, except with the consent of the domestic concern, be made publicly available, regardless of whether the Attorney General responds to such a request or the domestic concern withdraws such request before receiving a response.

(3) Any domestic concern who has made a request to the Attorney General under paragraph (1) may withdraw such request prior to the time the Attorney General issues an opinion in response to such request. Any request so withdrawn shall have no force or effect.

(4) The Attorney General shall, to the maximum extent practicable, provide timely guidance concerning the Department of Justice's present enforcement policy with respect to the preceding provisions of this section to potential exporters and small businesses that are unable to obtain specialized counsel on issues pertaining to such provisions. Such guidance shall be limited to responses to requests under paragraph (1) concerning conformity of specified prospective conduct with the Department of Justice's present enforcement policy regarding the preceding provisions of this section and general explanations of compliance responsibilities and of potential liabilities under the preceding provisions of this section.

77

(g) Penalties

(1)

(A) Any domestic concern that is not a natural person and that violates subsection (a) or (i) of this section shall be fined not more than $2,000,000.

(B) Any domestic concern that is not a natural person and that violates subsection (a) or (i) of this section shall be subject to a civil penalty of not more than $10,000 imposed in an action brought by the Attorney General.

(2)

(A) Any natural person that is an officer, director, employee, or agent of a domestic concern, or stockholder acting on behalf of such domestic concern, who willfully violates subsection (a) or (i) of this section shall be fined not more than $100,000 or imprisoned not more than 5 years, or both.

(B) Any natural person that is an officer, director, employee, or agent of a domestic concern, or stockholder acting on behalf of such domestic concern, who violates subsection (a) or (i) of this section shall be subject to a civil penalty of not more than $10,000 imposed in an action brought by the Attorney General.

(3) Whenever a fine is imposed under paragraph (2) upon any officer, director, employee, agent, or stockholder of a domestic concern, such fine may not be paid, directly or indirectly, by such domestic concern.

(h) Definitions For purposes of this section:

(1) The term "domestic concern" means—

78

(A) any individual who is a citizen, national, or resident of the United States; and

(B) any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States or a territory, possession, or commonwealth of the United States.

(2)

(A) The term "foreign official" means any officer or employee of a foreign government or any department, agency, or instrumentality thereof, or of a public international organization, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality, or for or on behalf of any such public international organization.

(B) For purposes of subparagraph (A), the term "public international organization" means—

(i) an organization that is designated by Executive order pursuant to section 288 of title 22; or

(ii) any other international organization that is designated by the President by Executive order for the purposes of this section, effective as of the date of publication of such order in the Federal Register.

(3)

(A) A person's state of mind is "knowing" with respect to conduct, a circumstance, or a result if—

(i) such person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or

(ii) such person has a firm belief that such circumstance exists or that such result is substantially certain to occur.

(B) When knowledge of the existence of a particular circumstance is required for an offense, such knowledge is established if a person is aware of a high probability of the existence of such circumstance, unless the person actually believes that such circumstance does not exist.

(4)

(A) The term "routine governmental action" means only an action which is ordinarily and commonly performed by a foreign official in—

(i) obtaining permits, licenses, or other official documents to qualify a person to do business in a foreign country;

(ii) processing governmental papers, such as visas and work orders;

(iii) providing police protection, mail pick-up and delivery, or scheduling inspections associated with contract performance or inspections related to transit of goods across country;

(iv) providing phone service, power and water supply, loading and unloading cargo, or protecting perishable products or commodities from deterioration; or

(v) actions of a similar nature.

(B) The term "routine governmental action" does not include any decision by a foreign official whether, or on what terms, to award new business to or to continue business with a particular party, or any action taken by a foreign official involved in the decision-making process to encourage a decision to award new business to or continue business with a particular party.

(5) The term "interstate commerce" means trade, commerce, transportation, or communication among the several States, or between any foreign country and any State or between any State and any place or ship outside thereof, and such term includes the intrastate use of—

(A) a telephone or other interstate means of communication, or

(B) any other interstate instrumentality.

(i) Alternative jurisdiction

(1) It shall also be unlawful for any United States person to corruptly do any act outside the United States in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to any of the persons or entities set forth in paragraphs (1), (2), and (3) of subsection (a), for the purposes set forth therein, irrespective of whether such United States person makes use of the mails or any means or instrumentality of interstate commerce in furtherance of such offer, gift, payment, promise, or authorization.

(2) As used in this subsection, the term "United States person" means a national of the United States (as defined in section 1101 of title 8) or any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship organized under the laws of the United States or any State, territory, possession, or commonwealth of the United States, or any political subdivision thereof.

Defendants Microsoft Inc. and Shareholders used its influence within the United States and domestic concerns with a US branch and headquarters with numerous subsidiaries to hide their illegal money to induce other participating foreign officials to hide and clean such illegal proceeds and to reinvest the clean money into investments around the world used to influence

81

others apart of the worldwide money laundering operation and using its software package as a tool to imprison persons through false pretense using that reason to stay unnoticed at the same time breaking the laws of the commerce and antitrust using its company reputation to hide such injustice and no one say nothing due to their invention of the Windows operating system software. Therefore, defendants Microsoft Inc. and Shareholders is liable of 15 U.S. Code § 78dd–2 Prohibited foreign trade practices by domestic concerns.

99. Damages owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH FOURTH CAUSE OF ACTION

**(15 U.S. Code § 78dd–3 - Prohibited foreign trade practices by persons other than issuers or domestic concerns)**

100. Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

101. Defendants Microsoft Inc. and Shareholders intended to commit 15 U.S. Code § 78dd–3 - Prohibited foreign trade practices by persons other than issuers or domestic concerns. 15 U.S. Code § 78dd–3 - Prohibited foreign trade practices by persons other than issuers or domestic concerns is: **any person within the territorial United States that**

(a) Prohibition It shall be unlawful for any person other than an issuer that is subject to section 78dd–1 of this title or a domestic concern (as defined in section 78dd–2 of this title), or for any officer, director, employee, or agent of such person or any stockholder thereof acting on behalf of such person, while in the territory of the United States, corruptly to make use of the mails or any means or instrumentality of interstate commerce or to do any other act in furtherance of an

offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

(1) any foreign official for purposes of—

(A)

(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such person in obtaining or retaining business for or with, or directing business to, any person;

(2) any foreign political party or official thereof or any candidate for foreign political office for purposes of—

(A)

(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

83

in order to assist such person in obtaining or retaining business for or with, or directing business to, any person; or

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office, for purposes of—

(A)

(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such person in obtaining or retaining business for or with, or directing business to, any person.

(b) Exception for routine governmental action

Subsection (a) of this section shall not apply to any facilitating or expediting payment to a foreign official, political party, or party official the purpose of which is to expedite or to secure the performance of a routine governmental action by a foreign official, political party, or party official.

(c) Affirmative defensesIt shall be an affirmative defense to actions under subsection (a) of this section that—

(1) the payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the foreign official's, political party's, party official's, or candidate's country; or

(2) the payment, gift, offer, or promise of anything of value that was made, was a reasonable and bona fide expenditure, such as travel and lodging expenses, incurred by or on behalf of a foreign official, party, party official, or candidate and was directly related to—

(A) the promotion, demonstration, or explanation of products or services; or

(B) the execution or performance of a contract with a foreign government or agency thereof.

(d) Injunctive relief

(1) When it appears to the Attorney General that any person to which this section applies, or officer, director, employee, agent, or stockholder thereof, is engaged, or about to engage, in any act or practice constituting a violation of subsection (a) of this section, the Attorney General may, in his discretion, bring a civil action in an appropriate district court of the United States to enjoin such act or practice, and upon a proper showing, a permanent injunction or a temporary restraining order shall be granted without bond.

(2) For the purpose of any civil investigation which, in the opinion of the Attorney General, is necessary and proper to enforce this section, the Attorney General or his designee are empowered to administer oaths and affirmations, subpoena witnesses, take evidence, and require the production of any books, papers, or other documents which the Attorney General deems

relevant or material to such investigation. The attendance of witnesses and the production of documentary evidence may be required from any place in the United States, or any territory, possession, or commonwealth of the United States, at any designated place of hearing.

(3) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, or other documents. Any such court may issue an order requiring such person to appear before the Attorney General or his designee, there to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey such order of the court may be punished by such court as a contempt thereof.

(4) All process in any such case may be served in the judicial district in which such person resides or may be found. The Attorney General may make such rules relating to civil investigations as may be necessary or appropriate to implement the provisions of this subsection.

(e) Penalties

(1)

(A) Any juridical person that violates subsection (a) of this section shall be fined not more than $2,000,000.

(B) Any juridical person that violates subsection (a) of this section shall be subject to a civil penalty of not more than $10,000 imposed in an action brought by the Attorney General.

(2)

(A) Any natural person who willfully violates subsection (a) of this section shall be fined not more than $100,000 or imprisoned not more than 5 years, or both.

(B) Any natural person who violates subsection (a) of this section shall be subject to a civil penalty of not more than $10,000 imposed in an action brought by the Attorney General.

(3) Whenever a fine is imposed under paragraph (2) upon any officer, director, employee, agent, or stockholder of a person, such fine may not be paid, directly or indirectly, by such person.

(f) Definitions For purposes of this section:

(1) The term "person", when referring to an offender, means any natural person other than a national of the United States (as defined in section 1101 of title 8 [1] or any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship organized under the law of a foreign nation or a political subdivision thereof.

(2)

(A) The term "foreign official" means any officer or employee of a foreign government or any department, agency, or instrumentality thereof, or of a public international organization, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality, or for or on behalf of any such public international organization.

(B) For purposes of subparagraph (A), the term "public international organization" means—

(i) an organization that is designated by Executive order pursuant to section 288 of title 22; or

(ii) any other international organization that is designated by the President by Executive order for the purposes of this section, effective as of the date of publication of such order in the Federal Register.

(3)

(A) A person's state of mind is knowing, with respect to conduct, a circumstance or a result if—

(i) such person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or

(ii) such person has a firm belief that such circumstance exists or that such result is substantially certain to occur.

(B) When knowledge of the existence of a particular circumstance is required for an offense, such knowledge is established if a person is aware of a high probability of the existence of such circumstance, unless the person actually believes that such circumstance does not exist.

(4)

(A) The term "routine governmental action" means only an action which is ordinarily and commonly performed by a foreign official in—

(i) obtaining permits, licenses, or other official documents to qualify a person to do business in a foreign country;

(ii) processing governmental papers, such as visas and work orders;

(iii) providing police protection, mail pick-up and delivery, or scheduling inspections associated with contract performance or inspections related to transit of goods across country;

(iv) providing phone service, power and water supply, loading and unloading cargo, or protecting perishable products or commodities from deterioration; or

(v) actions of a similar nature.

(B) The term "routine governmental action" does not include any decision by a foreign official whether, or on what terms, to award new business to or to continue business with a particular party, or any action taken by a foreign official involved in the decision-making process to encourage a decision to award new business to or continue business with a particular party.

(5) The term "interstate commerce" means trade, commerce, transportation, or communication among the several States, or between any foreign country and any State or between any State and any place or ship outside thereof, and such term includes the intrastate use of—

(A) a telephone or other interstate means of communication, or

(B) any other interstate instrumentality.

Defendants Microsoft Inc. and Shareholders NC 15 U.S. Code § 78dd–2 Prohibited foreign trade practices by domestic concerns made transaction of money using wire the Microsoft Windows program, cloud base computer, via phones fax or email to conduct illegal via commerce of several states to conduct transaction from the with foreign official s to bribe and conduct fraudulent transaction within the United States from cellphone to airplane to satellite resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of Prohibited foreign trade practices by persons other than issuers or domestic concerns.

102.    Damages owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH FIFTH CAUSE OF ACTION
### (Violation of Civil Rights Act of 1964)

103.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

104.    Defendants Microsoft Inc. and Shareholders intended to commit Violations of the Civil Rights Act of 1964.[1][2][3][4][5][6] Violation of Civil Rights is prohibits discrimination on the basis of race, color, religion, sex or national origin. Provisions of this civil rights act forbade discrimination on the basis of sex, as well as, race in hiring, promoting, and firing. Defendants a Microsoft Inc. and Shareholders Violation of Civil Rights Act of 1964 was discrimination and unfair treatment Mr. Davis received verse the other customers was a intended violation of Mr. Davis Civil Rights and Fourth Amendment rights because this was consider a search using the computer like a RING door bell except to spy on Mr. Davis with in his home and transporting that to strangers that out to due harm and spread false rumor on Mr. Davis harass and intimidate and gaslight for control and keep Mr. Davis subjected to that abuse around the clock resulted in damages and injurie to Mr. Davis. Therefore, Microsoft Inc. and Shareholders is liable for Violation of the Civil Rights Act of 1964.

[1]    Brown v. Board of Education, 347 U.S. 483 (1954)

[2]    Berman v. Parker, 348 U.S. 26 (1954) Under the Fifth Amendment's Takings Clause private property can be taken for a public purpose with just compensation

[3]    United States v. Guest, 383 U.S. 745 (1966) There is a constitutional right to travel from state to state, and the protections of the Fourteenth Amendment extend to citizens who suffer rights deprivations at the hands of private conspiracies where there is minimal state participation in the conspiracy

[4]    Kent v. Dulles, 357 U.S. 116 (1958) The right to travel is a part of the "liberty" of which the citizen cannot be deprived without due process of law under the Fifth Amendment.

[5]    United States v. Jones, 565 U.S. 400 (2012) Attaching a GPS device to a vehicle and then using the device to monitor the vehicle's movements constitutes a search under the Fourth Amendment.

[6]    Katz v. United States, 389 U.S. 347 (1967) The Fourth Amendment's ban on unreasonable searches and seizures applies to all places where an individual has a "reasonable expectation of privacy."

105.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury.

Defendants are liable for damages.


## TWENTIETH SIXTH CAUSE OF ACTION

### ( Invasion of Privacy by Inclusion on Seclusion)

106.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

107.    Defendants Microsoft Inc. and Shareholders intended to commit Invasion of Privacy by Inclusion on Seclusion. Invasion of Privacy by Inclusion [1]on Seclusion is intended to commit inclusion upon seclusion. Intrusion upon seclusion applies when someone intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another. Defendants Invasion of Privacy by Inclusion on Seclusion was having Microsoft hackers agents to aide Infragard to mantian and keep the coding and severs operational while intruding on Mr. Davis privacy including using a infra red light xray to peer into his home where he had to have shielding put up to block it. Microsoft help remotely and locally the coding and signal engaged with the the close air support received from the commercial airline industry all must be maintain for the signal to be received around the United States and the world to know Mr. Davis whereabouts at all times was a violation of his civil rights resulted in damages and injury to Mr. Davis. Therefore, defendant Microsoft Inc. and Shareholders is liable for inclusion upon seclusion.

Carpenter v. United States, 267 U. S. 132 landmark privacy decision.

108.    Damages owe damages in an amount greater than 75,000 for plaintiff injury.

Defendants are liable for damages.

91

109.   Defendants  Microsoft Inc. and Shareholders intended to commit intentionally. Intentionally is done deliberately. Defendants Microsoft Inc. and Shareholders intentionally was to deliberately help aid and abet Infragard to illegally share to monitor Mr. Davis information and send that information to person all around the earth that was involved in this scheme and Mr. Davis is just one of many and every time the agent get paid the whole time no matter its another company or affiliate gets paid in the US and Overseas from data tracked on the Microsoft Windows operating system.  Therefore, defendants Microsoft Inc. and Shareholders is liable for intentionally.

110.   Damages owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

111.  Defendant Microsoft Inc. and Shareholders intended to commit intruding.  Intruding is the act of wrongfully entering upon, seizing, or taking possession of the property of another. Defendants Microsoft Inc. and Shareholders  intruding was seizing Mr. Davis information while paying to use their Microsoft Windows which unlawfully was tracking information to give to Microsoft agents that was helping the Infragard all to receive kickback monies and illegal money laundering to cause harm to innocent persons like Mr. Davis resulted in damages and Mr. Davis injury.  Therefore, defendants Microsoft Inc. and Shareholders is liable for intruding.

112.   Damages owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

113.   Defendants Microsoft Inc. and Shareholders  intended to commit on the solitude or seclusion of another person, or on their private affairs. On the solitude or seclusion of another person, or on their private affairs is intrusion on a person private affair.  Defendants Microsoft

92

Inc. and Shareholders on the solitude or seclusion of another person, or on their private affairs was intrusion on using Microsoft Windows to intrude on Mr. Davis private affairs and broadcast that to agents and agents spread it around town and the world everyone intrude on your private matters resulted in injury and damage to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of on the solitude or seclusion of another person.

114. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damage

115. Defendants Microsoft Inc. and Shareholders intended to commit in a manner that would be highly offensive to a reasonable person. In a manner that would be highly offensive to a reasonable person is the test is whether an ordinary reasonable person would think that what has happened is a breach of an individual's reasonable expectations of privacy. Defendants Microsoft Inc. and Shareholders in a manner that would be highly reasonable person was a reasonable prudent person if known would not have been in agreement or would think this behavior was acceptable at any level resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable for in a manner that would be highly offensive to a reasonable person.

116. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

117. Defendants Microsoft Inc. and Shareholders intended to commit damages compensatory. Damages compensatory is compensatory damages are money awarded to a plaintiff to compensate for damages, injury, or another incurred loss. Compensatory damages are awarded in civil court cases where loss has occurred as a result of the negligence or unlawful

93

conduct of another party. Defendants Microsoft Inc. and Shareholders compensatory damages was from the illegal intrusion on Mr. Davis privacy when he expected privacy. Therefore, defendants Microsoft Inc. and Shareholders is liable for damages compensatory.

118.     Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH SEVENTH CAUSE OF ACTION
### (False Imprisonment)

119.     Plaintiff realleage and incorporate by reference all of the preceding paragraphs.

120.     Defendants Microsoft Inc. and Shareholders intended to commit false imprisonment. See [1][2] False Imprisonment is a person commits false imprisonment when he commits an act of restraint on another person which confines that person in a bounded area. Defendants Microsoft Inc. and Shareholders false imprisonment was ever time Mr. Davis was in use of Microsoft Window they hacking teams had Admin Rights and was my database manager who controlled the flow of the data and shared it amongs agents of many companies and many households in the United States and the world that get paid of Mr. Davis false imprisonmen resulted in damages and injury to Mr. Davis. Therefore, is liable of false imprisonment.

[1] Herring v. Boyle  1 Cr. M. & R. 377, 149 Eng. Rep. 1126 (Ex. 1834)

[2] Hoffman v. Clinic Hospital, Inc., 213 N.C. 669, 197 S.E. 161 (1938).

121.     Damages owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

122.     Defendants Microsoft Inc. and Shareholders intended to commit the illegal restraint of a person. The illegal restraint of a person is The crime of unlawful restraint occurs whenever

94

someone illegally deprives others of their physical freedom. Unlawful restraint happens when one person knowingly and intentionally restrains another person without that person's consent and without legal justification. Defendants Microsoft Inc. and Shareholders the illegal restraint of a person was subject Mr. Davis to remote server and admin rights that Microsoft commandeered Mr. Davis computer software which was theirs and put a online tracker even when Mr. Davis paid for a VPN to stay private they could see my passwords on the screen and they could track my keystokes these persons was computer engineers on the software side and the hardware side restraining Mr. Davis every move resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of the illegal restraint of a person.

123.    Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

124.    Defendants Microsoft Inc. and Shareholders intended to commit by force or threat of force. To commit by force or threat of force is something to do which causes another person to act against a person's will. Defendants Microsoft Inc. and Shareholders or threat of force was Microsoft and its agents using information to intimidate and bully and gaslight you with while you online from the many agents including Infragard all used a psychological attack to get inside your mind everyday to harass you resulted in damages and Mr. Davis injury. Therefore, defendants is liable of to commit by force or threat of force.

125.    Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

126. Defendants Microsoft Inc. and Shareholders intended to commit without the other person's consent (or against their will). Without the other person's consent (or against their will) is force restraint against a persons consent. Defendants without the other person's consent ( or against their will ) was the taking control of Mr. Davis computer and software without permission and against Mr. Davis will where he did not have any say so in the matter. Therefore, defendants is liable of without the other person's consent ( or against their will).

127. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

128. Defendants Microsoft Inc. and Shareholders intended to commit proximate cause. Proximate cause is an event sufficiently related to an injury that the courts deem the event to be the cause of that injury. Cause-in-fact is determined by the "but for" test: But for the action, the result would not have happened resulted in damages and injury to Mr. Davis. Defendants proximate cause was the placement of GPS spy equipment and causing a false imprisonment was the direct result of damages to Mr. Davis including injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of proximate cause.

129. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

130. Defendants Microsoft Inc. and Shareholders intended to commit reasonable person. Reasonable person is a test that asks whether the decisions made were legitimate and designed to remedy a certain issue under the circumstances at the time. Courts using this standard look at both the ultimate decision, and the process by which a party went about making that decision. Defendant Microsoft Inc. and Shareholders reasonable person was no reasonable person would

attempt to restrain a person via GPS tracking device against their will resulted in injury and damages to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable for reasonable person.

131. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH EIGHTH CAUSE OF ACTION
### ( Intentional Infliction of Emotional Distress)

132. Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

133. Defendants Microsoft Inc. and Shareholders intended to commit intentional infliction of Emotional Distress. Intentional Infliction of Emotional Distress is a common law tort that allows individuals to recover for severe emotional distress caused by another individual who intentionally or recklessly inflicted emotional distress by behaving in an "extreme and outrageous" way. Defendants Microsoft Inc. and Shareholders was the blatant disregard of Mr. Davis rights to privacy while using Microsoft Windows it was used as spy equipment and tracking equipment was installed to track and view record and produce live feed remotely and in the US and around the world up until now resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of intentional infliction of emotional distress.

134. Defendants owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

135. Defendants Microsoft Inc. and Shareholders intended to commit the defendant must act intentionally or recklessly. The defendant must act intentionally or recklessly is the state of mind

where a person deliberately and unjustifiably pursues a course of action while consciously

disregarding any risks flowing from such action. Defendants Microsoft Inc. and Shareholders

the defendant must act intentionally or recklessly was the deliberate act to cause Mr.Davis harma

was known and no one care more about getting the illegal kickback money and was intended to

be reckeless towards Mr. Davis at level to get paid resulted in damages and injury to Mr. Davis.

Therefore, defendants Microsoft Inc. and Shareholders is liable of the defendant must act

intentionally or recklessly.

136.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury.
Defendants are liable for damages.

137.    Defendants Microsoft Inc. and Shareholders intended to commit the defendant's conduct

must be extreme and outrageous. The defendant's conduct must be extreme and outrageous is as

intentionally or recklessly causing another person severe emotional distress through extreme or

outrageous acts. This can be a result of either the Defendant's acts or words. Defendants

Microsoft Inc. and Shareholders the defendant's conduct must be extreme and outrageous was

harassment to in order to break a person down to nothing was the ultimate goal of Microsoft

hack teams and Infragard harassment and bullying online resulted in damages and injury to Mr.

Davis. Therefore, defendants is liable of the defendant's conduct must be extreme and

outrageous.

138.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury.
Defendants are liable for damages.

139.    Defendants Microsoft Inc. and Shareholders intended to commit the conduct must be the

cause. The conduct must be the cause is connection between his or her conduct and the injury to

the plaintiff. Defendants Microsoft Inc. and Shareholders conduct was the proximate cause of Mr. Davis injury by their relentless online harassment. Therefore, defendants Microsoft Inc. and Shareholders is liable of the conduct must be the cause.

140.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

141.    Defendants Microsoft Inc. and Shareholders intended to commit of severe emotional distress. Of severe emotional distress is   occurs when one acts abominably or outrageously with intent to cause another to suffer severe emotional distress, such as issuing the threat of future harm. Defendants the whole aim of Microsoft was complete control of your mind through it software and Mr. Davis was a slave to it because it was nowhere else selling what Microsoft was selling so Mr. Davis had to stand there and take the abuse which affected him resulted injury and damages to Mr. Davis.  Therefore, defendant Microsoft Inc. and Shareholders is liable of of severe emotion.

142.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

## TWENTIETH NINTH CAUSE OF ACTION
### ( Assault and battery)

Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

143.    Defendants Microsoft Inc. and Shareholders intended to commit assault.  Assault and battery is a threat or physical act that creates a reasonable apprehension of imminent harmful or offensive contact with one's person involving an additional, aggravating factor, such as the intent to inflict serious bodily injury or the use of a dangerous weapon.  Defendants Microsoft Inc. and

99

Shareholders assault and battery was extreme harassment and threats by Microsoft using Windows as a psychological weapon resulted in damages and injury to Mr. Davis. Therefore defendants, Microsoft Inc. and Shareholders is liable of aggravated assault.

144.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

145.    Defendants Microsoft Inc. and Shareholders intended to commit an act by a defendant. An act by a defendant is the defendant acts. The defendant intends to cause the victim to apprehend imminent harmful contact from the defendant. The defendant's action causes the victim to reasonably apprehend such a contact. Defendants was the relentless harassment by many person in different towns and cities that knew where and who I was by Microsoft giving away my IP address and information in order for them to join in and get paid to harass Mr. Davis without worry or retaliation resulting in damages and injury to Mr. Davis. Therefore, Microsoft Inc. and Shareholders is liable of an act by a defendant.

146.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

147.    Defendants  Microsoft Inc. and Shareholders intended to commit an intent to cause harmful or offensive contact on the part of the defendant.  An intent to cause harmful or offensive contact on the part of the defendant is At common law, an intentional unpermitted act causing harmful or offensive contact with the "person" of another.  Defendants Microsoft Inc. and Shareholders an intent to cause harmful or offensive contact on the part of the defendant was was the harmful contact of Mr. Davis and harrassly involving possible millions of persons in his business to harass him every waking momument resulted in injury and damages to Mr. Davis.

Therefore, defendants Is liable of An intent to cause harmful or offensive contact on the part of the defendant.

148.    Defendant owe damages in an amount greater than 75,000 for plaintiff injury. Defendants are liable for damages.

149.    Defendants Microsoft Inc. and Shareholders intended to commit harmful or offensive contact to the victim. Harmful or offensive contact to the victim is at common law, an intentional unpermitted act causing harmful or offensive contact with the "person" of another. Battery is concerned with the right to have one's body left alone by others. Battery is both a tort and a crime. Defendants Microsoft Inc. and Shareholders harmful Microsoft agents was constantly harmful everyday it done stop the harassing behavior it is meant to break your soul and sprit this is think tank and university type formulated attacks resulted in harassment and abuse resulting to in injury and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of harmful or offensive contact to the victim.

150.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

151.    Defendants Microsoft Inc. and Shareholders intended to commit proximate cause. Proximate cause is the likelihood of calling something a proximate cause increases as the cause becomes more direct and more necessary for the injury to occur. Defendants Microsoft Inc. and Shareholders proximate cause was the harassment and mental anguish caused by Microsoft employees actions towards Mr. Davis during his experience to renting their Microsoft Windows software and thru this software resulted in damages and Mr. Davis injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of proximate cause.

152.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury.
Defendants are liable for damages.


## THIRTIETH CAUSE OF ACTION
### (Joint and Severally)

153.   Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

154.   Defendants Microsoft Inc. and Shareholders owe damages in an amount that exceeds
75,000 for plaintiff injury.  Defendants are liable for damages.  Joint and Severally is  The term
jointly and severally indicates that all parties are equally responsible for carrying out the full
terms of an agreement. In a personal liability case, for example, each party named may be
pursued for repayment of the entire amount due.  Defendant  Microsoft Inc. and Shareholders is
still liable and accountable if by any chance a shareholder cannot pay.  Therefore defendant,
Microsoft Inc. and Shareholders is liable of joint and severally.

155.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury.
Defendants are liable for damages.


## THIRTIETH FIRST CAUSE OF ACTION
### (Enterprise Liability)

156.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

157.    Defendants Microsoft Inc. and Shareholders intended to commit Enterprise Liabiltiy.
Enterprise liabilty is a legal doctrine under which individual entities (for example, otherwise
legally unrelated corporations or people) can be held jointly liable for some action on the basis of
being part of a shared enterprise. Enterprise liability is a form of secondary liability.  Defendant

Microsoft Inc. and Shareholders is responsible for the harassment and joining other companies to do otherwise in large cartel enterprised resulted in Mr. Davis injury. Therefore defendant, Microsoft Inc. and Shareholders is liable of enterprise liability.

158. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

159. Defendants Microsoft Inc. and Shareholders intended to commit the plaintiff must show that he was injured by a product. The plaintiff must show that he was injured by a product is that the product that the victim was using cause the injury. Defendant Microsoft Inc. and Shareholders Microsoft Windows and the way it was used to bully and attack intentionally by algorithm or using racism algorithms pictures of a black man going hung algorithms by its Microsoft agents coding in such programs to cause harassment resulted in Mr. Davis injury. Therefore defendant, Microsoft Inc and its Shareholders is liable of the plaintiff must show that he was injuried by a product.

160. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

161. Defendants Microsoft Inc. and Shareholders intended to commit that the injury occurred because the product was defective. The injury occurred because the product was defective is that the abnormal product cause injury due to it being out of specifications than a normal product would be. Defendants Microsoft Inc. and Shareholders induce the defectiveness of its own product intentionally to cause harm and bullying to psychological break down Mr. Davis and was proven affective resulted in damages and injury to Mr. Davis. Therefore defendant, is liable of the injury occurred because the product was defective.

162.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

163.    Defendants Microsoft Inc. and Shareholders intended to commit that the defect existed at the time the product left the defendant's hands. The defect existed at the time the product left the defendant's hands is that soon as left the defendant hands and the defendant miss the defect. Defendant Microsoft Inc. and Shareholders the defect existed at the time the product left the defendant's hands was the defect the recoding the Microsoft Windows with racism algorithms and bullying algorithms words and picture already left and tracking using the Mr. Davis viewing into his home with his owe computer screen already left the hand whether intentional or by accident. Therefore, defendant Microsoft Inc. and Shareholders is liable of the defect existed at the time the product left the defendant's hands.

164.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## THIRTIETH SECOND CAUSE OF ACTION
### (Sarbanes Oxley Act (SOX)
### (18 U.S.C. §1514A)

165.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

166.    Defendants Microsoft Inc. and Shareholders intended to commit Sarbanes Oxley Act (SOX). Sarbanes Oxley Act (SOX) is The Sarbanes-Oxley Act of 2002 is a law the U.S. Congress passed on July 30 of that year to help protect investors from fraudulent financial reporting by corporations See[1]

And including:

§1514A. Civil action to protect against retaliation in fraud cases

(a) Whistleblower protection for employees of publicly traded companies.--No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)) including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, or nationally recognized statistical rating organization (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c), or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--

(A) a Federal regulatory or law enforcement agency;

(B) any Member of Congress or any committee of Congress; or

(C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

(2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

(b) Enforcement action.--

(1) In general.--A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by--

(A) filing a complaint with the Secretary of Labor; or

(B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

(2) Procedure.--

(A) In general.--An action under paragraph (1)(A) shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code.

(B) Exception.--Notification made under section 42121(b)(1) of title 49, United States Code, shall be made to the person named in the complaint and to the employer.

(C) Burdens of proof.--An action brought under paragraph (1)(B) shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code.

(D) Statute of limitations.--An action under paragraph (1) shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation.

(E) Jury trial.--A party to an action brought under paragraph (1)(B) shall be entitled to trial by jury.

(c) Remedies.--

(1) In general.--An employee prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the employee whole.

(2) Compensatory damages.--Relief for any action under paragraph (1) shall include--

(A) reinstatement with the same seniority status that the employee would have had, but for the discrimination;

(B) the amount of back pay, with interest; and

(C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

(d) Rights retained by employee.--Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law, or under any collective bargaining agreement.

(e)Nonenforceability of certain provisions waiving rights and remedies or requiring arbitration of disputes.--

(1) Waiver of rights and remedies.--The rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement.

(2) Predispute arbitration agreements.--No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.

Defendants Microsoft Inc. and Shareholders was a Sarbanes Oxley Act (SOX) (18 U.S.C. §1514A) was using its Microsoft Windows operating system for subjecting Mr. Davis using his computer as a ALEXIS minus the talk back feature for live audio, live video to like inside his home to bullying, using Microsoft hackers to control and hack the program and take Admin Rights and reconfigure the software to steal files and control and stop data at their convience including spying and remotely sharing that information with companies, individuals in fraudulent activities among other businesses participating in a huge money laundering and kickback scheme that spans the globe. Therefore, defendants Microsoft Windows and Shareholders are liable for violations of the Sarbanes Oxley Act (SOX) (18 U.S.C. §1514A).

167.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

[1] SEC v. WorldCom Inc. 452 F. Supp. 2d 531 (S.D.N.Y. 2006)

## THIRTIETH THIRD CAUSE OF ACTION
### (Electronics Communications Privacy Act of 1986)
### Wiretap Act 18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited.

168. Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

169. Defendants Microsoft Inc. and Shareholders intended to commit Wiretap Act 18 U.S. Code § 2511. See [1]Interception and disclosure of wire, oral, or electronic communications prohibited. Wiretap Act 18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited is

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(e)

(i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)–(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation,

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

(2)

110

(a)

(i) It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

(ii) Notwithstanding any other law, providers of wire or electronic communication service, their officers, employees, and agents, landlords, custodians, or other persons, are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, if such provider, its officers, employees, or agents, landlord, custodian, or other specified person, has been provided with—

(A) a court order directing such assistance or a court order pursuant to section 704 of the Foreign Intelligence Surveillance Act of 1978 signed by the authorizing judge, or

(B) a certification in writing by a person specified in section 2518(7) of this title or the Attorney General of the United States that no warrant or court order is required by law, that all statutory requirements have been met, and that the specified assistance is required,

setting forth the period of time during which the provision of the information, facilities, or technical assistance is authorized and specifying the information, facilities, or technical assistance required. No provider of wire or electronic communication service, officer, employee, or agent thereof, or landlord, custodian, or other specified person shall disclose the existence of any interception or surveillance or the device used to accomplish the interception or surveillance with respect to which the person has been furnished a court order or certification under this chapter, except as may otherwise be required by legal process and then only after prior notification to the Attorney General or to the principal prosecuting attorney of a State or any political subdivision of a State, as may be appropriate. Any such disclosure, shall render such person liable for the civil damages provided for in section 2520. No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, or agents, landlord, custodian, or other specified person for providing information, facilities, or assistance in accordance with the terms of a court order, statutory authorization, or certification under this chapter.

(iii) If a certification under subparagraph (ii)(B) for assistance to obtain foreign intelligence information is based on statutory authority, the certification shall identify the specific statutory provision and shall certify that the statutory requirements have been met.

(b) It shall not be unlawful under this chapter for an officer, employee, or agent of the Federal Communications Commission, in the normal course of his employment and in discharge of the monitoring responsibilities exercised by the Commission in the enforcement of chapter 5 of title 47 of the United States Code, to intercept a wire or electronic communication, or oral communication transmitted by radio, or to disclose or use the information thereby obtained.

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

(e) Notwithstanding any other provision of this title or section 705 or 706 of the Communications Act of 1934, it shall not be unlawful for an officer, employee, or agent of the United States in the normal course of his official duty to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, as authorized by that Act.

(f) Nothing contained in this chapter or chapter 121 or 206 of this title, or section 705 of the Communications Act of 1934, shall be deemed to affect the acquisition by the United States Government of foreign intelligence information from international or foreign communications, or foreign intelligence activities conducted in accordance with otherwise applicable Federal law involving a foreign electronic communications system, utilizing a means other than electronic surveillance as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, and procedures in this chapter or chapter 121 and the Foreign Intelligence Surveillance Act of 1978 shall be the exclusive means by which electronic surveillance, as defined in section 101 of such

Act, and the interception of domestic wire, oral, and electronic communications may be conducted.

(g) It shall not be unlawful under this chapter or chapter 121 of this title for any person—

(i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;

(ii) to intercept any radio communication which is transmitted—

(I) by any station for the use of the general public, or that relates to ships, aircraft, vehicles, or persons in distress;

(II) by any governmental, law enforcement, civil defense, private land mobile, or public safety communications system, including police and fire, readily accessible to the general public;

(III) by a station operating on an authorized frequency within the bands allocated to the amateur, citizens band, or general mobile radio services; or

(IV) by any marine or aeronautical communications system;

(iii) to engage in any conduct which—

(I) is prohibited by section 633 of the Communications Act of 1934; or

(II) is excepted from the application of section 705(a) of the Communications Act of 1934 by section 705(b) of that Act;

(iv) to intercept any wire or electronic communication the transmission of which is causing harmful interference to any lawfully operating station or consumer electronic equipment, to the extent necessary to identify the source of such interference; or

(v) for other users of the same frequency to intercept any radio communication made through a system that utilizes frequencies monitored by individuals engaged in the provision or the use of such system, if such communication is not scrambled or encrypted.

(h) It shall not be unlawful under this chapter—

(i) to use a pen register or a trap and trace device (as those terms are defined for the purposes of chapter 206 (relating to pen registers and trap and trace devices) of this title); or

(ii) for a provider of electronic communication service to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire or electronic communication, or a user of that service, from fraudulent, unlawful or abusive use of such service.

(i) It shall not be unlawful under this chapter for a person acting under color of law to intercept the wire or electronic communications of a computer trespasser transmitted to, through, or from the protected computer, if—

(I) the owner or operator of the protected computer authorizes the interception of the computer trespasser's communications on the protected computer;

(II) the person acting under color of law is lawfully engaged in an investigation;

(III) the person acting under color of law has reasonable grounds to believe that the contents of the computer trespasser's communications will be relevant to the investigation; and

(IV) such interception does not acquire communications other than those transmitted to or from the computer trespasser.

(j) It shall not be unlawful under this chapter for a provider of electronic communication service to the public or remote computing service to intercept or disclose the contents of a wire or electronic communication in response to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies section 2523.

(3)

(a) Except as provided in paragraph (b) of this subsection, a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

(b) A person or entity providing electronic communication service to the public may divulge the contents of any such communication—

(i) as otherwise authorized in section 2511(2)(a) or 2517 of this title;

(ii) with the lawful consent of the originator or any addressee or intended recipient of such communication;

(iii) to a person employed or authorized, or whose facilities are used, to forward such communication to its destination; or

(iv) which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.

(4)

(a) Except as provided in paragraph (b) of this subsection or in subsection (5), whoever violates subsection (1) of this section shall be fined under this title or imprisoned not more than five years, or both.

(b) Conduct otherwise an offense under this subsection that consists of or relates to the interception of a satellite transmission that is not encrypted or scrambled and that is transmitted—

(i) to a broadcasting station for purposes of retransmission to the general public; or

(ii) as an audio subcarrier intended for redistribution to facilities open to the public, but not including data transmissions or telephone calls,

is not an offense under this subsection unless the conduct is for the purposes of direct or indirect commercial advantage or private financial gain.

(5)

(a)(i) If the communication is—

(A) a private satellite video communication that is not scrambled or encrypted and the conduct in violation of this chapter is the private viewing of that communication and is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain; or

(B) a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct in violation of this chapter is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain,

then the person who engages in such conduct shall be subject to suit by the Federal Government in a court of competent jurisdiction.

(ii) In an action under this subsection—

(A) if the violation of this chapter is a first offense for the person under paragraph (a) of subsection (4) and such person has not been found liable in a civil action under section 2520 of this title, the Federal Government shall be entitled to appropriate injunctive relief; and

(B) if the violation of this chapter is a second or subsequent offense under paragraph (a) of subsection (4) or such person has been found liable in any prior civil action under section 2520, the person shall be subject to a mandatory $500 civil fine.

(b) The court may use any means within its authority to enforce an injunction issued under paragraph (ii)(A), and shall impose a civil fine of not less than $500 for each violation of such an injunction. Defendants Microsoft Inc. and Shareholders Wiretap Act 18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited was performed by Microsoft Inc. and Shareholders aiding government entities Infragard in an illegal investigation exceeding access illegally of Mr. Davis wire by performing a man in the middle attack to intercept all forms of communications, injecting software to use Mr. Davis computer screen as a cam to have video, and using the speakers internal and external to pick up voice resulting in Mr. Davis injury. Therefore, defendant Microsoft Inc. and Shareholders is liable of

Wiretap Act 18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited.

[1] Katz v. United States 389 US 347 (1987)

170.    Damages owe in an amount that exceeds 75,000 for plaintiff injury.  Defendants are liable for damages.

## THIRTIETH FOURTH CAUSE OF ACTION
### (Treason U. S. C. 2381)

171.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

172.    Defendants  Microsoft Inc. and Shareholders intended to commit treason. Treason isWhoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States. Defendants Microsoft Inc and Shareholders treasons was their actions and collusions within the United States and overseas the theft, money launderying is a crime against the United States its citizens and against Mr. Davis resulted in damage and injury to Mr. Davis.  Therefore, defendant Microsoft Inc. and Shareholders is liable for treason.

173.    Damages owe in an amount that exceeds 75,000 for plaintiff injury.  Defendants are liable for damages.

## THIRTIETH FIFTH  CAUSE OF ACTION
### ( Acts of Terrorism Transcending National Boundaries)
### (18 U. S. C. Code 2332b)

174.    Plaintiff reallege and incorporate by reference all of the preceding paragraphs.

175.    Defendants  Microsoft Inc. and Shareholders intended to commit Acts of Terrorism Transcending National Boundaries is: (a) Prohibited Acts.—

(1) Offenses.—Whoever, involving conduct transcending national boundaries and in a circumstance described in subsection (b)—

(A) kills, kidnaps, maims, commits an assault resulting in serious bodily injury, or assaults with a dangerous weapon any person within the United States; or

(B) creates a substantial risk of serious bodily injury to any other person by destroying or damaging any structure, conveyance, or other real or personal property within the United States or by attempting or conspiring to destroy or damage any structure, conveyance, or other real or personal property within the United States;

in violation of the laws of any State, or the United States, shall be punished as prescribed in subsection (c).

(2) Treatment of threats, attempts and conspiracies.—

Whoever threatens to commit an offense under paragraph (1), or attempts or conspires to do so, shall be punished under subsection (c).

(b) Jurisdictional Bases.—

(1) Circumstances.—The circumstances referred to in subsection (a) are—

(A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense;

(B) the offense obstructs, delays, or affects interstate or foreign commerce, or would have so obstructed, delayed, or affected interstate or foreign commerce if the offense had been consummated;

(C) the victim, or intended victim, is the United States Government, a member of the uniformed services, or any official, officer, employee, or agent of the legislative, executive, or judicial branches, or of any department or agency, of the United States;

(D) the structure, conveyance, or other real or personal property is, in whole or in part, owned, possessed, or leased to the United States, or any department or agency of the United States;

(E) the offense is committed in the territorial sea (including the airspace above and the seabed and subsoil below, and artificial islands and fixed structures erected thereon) of the United States; or

(F) the offense is committed within the special maritime and territorial jurisdiction of the United States.

(2) Co-conspirators and accessories after the fact.—

Jurisdiction shall exist over all principals and co-conspirators of an offense under this section, and accessories after the fact to any offense under this section, if at least one of the circumstances described in subparagraphs (A) through (F) of paragraph (1) is applicable to at least one offender.

(c) Penalties.—

(1) Penalties.—Whoever violates this section shall be punished—

(A) for a killing, or if death results to any person from any other conduct prohibited by this section, by death, or by imprisonment for any term of years or for life;

(B) for kidnapping, by imprisonment for any term of years or for life;

(C) for maiming, by imprisonment for not more than 35 years;

(D) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than 30 years;

(E) for destroying or damaging any structure, conveyance, or other real or personal property, by imprisonment for not more than 25 years;

(F) for attempting or conspiring to commit an offense, for any term of years up to the maximum punishment that would have applied had the offense been completed; and

(G) for threatening to commit an offense under this section, by imprisonment for not more than 10 years.

(2) Consecutive sentence.—

Notwithstanding any other provision of law, the court shall not place on probation any person convicted of a violation of this section; nor shall the term of imprisonment imposed under this section run concurrently with any other term of imprisonment.

(d) Proof Requirements.—The following shall apply to prosecutions under this section:

(1) Knowledge.—

The prosecution is not required to prove knowledge by any defendant of a jurisdictional base alleged in the indictment.

(2) State law.—

In a prosecution under this section that is based upon the adoption of State law, only the elements of the offense under State law, and not any provisions pertaining to criminal procedure or evidence, are adopted.

(e) Extraterritorial Jurisdiction.—There is extraterritorial Federal jurisdiction—

(1) over any offense under subsection (a), including any threat, attempt, or conspiracy to commit such offense; and

(2) over conduct which, under section 3, renders any person an accessory after the fact to an offense under subsection (a).

(f) Investigative Authority.—

In addition to any other investigative authority with respect to violations of this title, the Attorney General shall have primary investigative responsibility for all Federal crimes of terrorism, and any violation of section 351(e), 844(e), 844(f)(1), 956(b), 1361, 1366(b), 1366(c), 1751(e), 2152, or 2156 of this title, and the Secretary of the Treasury shall assist the Attorney General at the request of the Attorney General. Nothing in this section shall be construed to interfere with the authority of the United States Secret Service under section 3056.

(g) Definitions.—As used in this section—

(1) the term "conduct transcending national boundaries" means conduct occurring outside of the United States in addition to the conduct occurring in the United States;

(2) the term "facility of interstate or foreign commerce" has the meaning given that term in section 1958(b)(2);

(3) the term "serious bodily injury" has the meaning given that term in section 1365(g)(3); [1]

(4) the term "territorial sea of the United States" means all waters extending seaward to 12 nautical miles from the baselines of the United States, determined in accordance with international law; and

(5) the term "Federal crime of terrorism" means an offense that—

(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

(B) is a violation of—

(i) section 32 (relating to destruction of aircraft or aircraft facilities), 37 (relating to violence at international airports), 81 (relating to arson within special maritime and territorial jurisdiction), 175 or 175b (relating to biological weapons), 175c (relating to variola virus), 229 (relating to chemical weapons), subsection (a), (b), (c), or (d) of section 351 (relating to congressional, cabinet, and Supreme Court assassination and kidnaping), 831 (relating to nuclear materials), 832 (relating to participation in nuclear and weapons of mass destruction threats to the United States) [2] 842(m) or (n) (relating to plastic explosives), 844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death), 844(i) (relating to arson and bombing of property used in interstate commerce), 930(c) (relating to killing or attempted killing during an attack on a Federal facility with a dangerous weapon), 956(a)(1) (relating to conspiracy to murder, kidnap, or maim persons abroad), 1030(a)(1) (relating to protection of computers), 1030(a)(5)(A) resulting in damage as defined in 1030(c)(4)(A)(i)(II) through (VI) (relating to protection of computers), 1114 (relating to killing or attempted killing of officers and employees of the United States), 1116 (relating to murder or manslaughter of foreign officials,

official guests, or internationally protected persons), 1203 (relating to hostage taking), 1361

(relating to government property or contracts), 1362 (relating to destruction of communication

lines, stations, or systems), 1363 (relating to injury to buildings or property within special

maritime and territorial jurisdiction of the United States), 1366(a) (relating to destruction of an

energy facility), 1751(a), (b), (c), or (d) (relating to Presidential and Presidential staff

assassination and kidnaping), 1992 (relating to terrorist attacks and other acts of violence against

railroad carriers and against mass transportation systems on land, on water, or through the air),

2155 (relating to destruction of national defense materials, premises, or utilities), 2156 (relating

to national defense material, premises, or utilities), 2280 (relating to violence against maritime

navigation), 2280a (relating to maritime safety), 2281 through 2281a (relating to violence against

maritime fixed platforms), 2332 (relating to certain homicides and other violence against United

States nationals occurring outside of the United States), 2332a (relating to use of weapons of

mass destruction), 2332b (relating to acts of terrorism transcending national boundaries), 2332f

(relating to bombing of public places and facilities), 2332g (relating to missile systems designed

to destroy aircraft), 2332h (relating to radiological dispersal devices), 2332i (relating to acts of

nuclear terrorism), 2339 (relating to harboring terrorists), 2339A (relating to providing material

support to terrorists), 2339B (relating to providing material support to terrorist organizations),

2339C (relating to financing of terrorism), 2339D (relating to military-type training from a

foreign terrorist organization), or 2340A (relating to torture) of this title;

(ii) sections 92 (relating to prohibitions governing atomic weapons) or 236 (relating to sabotage

of nuclear facilities or fuel) of the Atomic Energy Act of 1954 (42 U.S.C. 2122 or 2284);

(iii) section 46502 (relating to aircraft piracy), the second sentence of section 46504 (relating to

assault on a flight crew with a dangerous weapon), section 46505(b)(3) or (c) (relating to

125

explosive or incendiary devices, or endangerment of human life by means of weapons, on aircraft), section 46506 if homicide or attempted homicide is involved (relating to application of certain criminal laws to acts on aircraft), or section 60123(b) (relating to destruction of interstate gas or hazardous liquid pipeline facility) of title 49; or

(iv) section 1010A of the Controlled Substances Import and Export Act (relating to narco-terrorism).

176. Defendants Microsoft Inc. and Shareholders Acts of Terrorism Transcending National Boundaries was the acts using their software as a weapon within the United States and abroad in a domestic terrorism attack against the United States, American citizens and Mr.Davis used as a scapegoat to hide their criminal activity is a crime against society and Mr. Davis resulted in damages and injury. Therefore, defendants Microsoft Inc. and Shareholders is liable of Acts of Terrorism Transcending National Boundaries.

177. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

## THIRTIETH CAUSE OF ACTION

### (Respondeat Superior)

178. Plaintiff realleg and incorporate by reference all of the preceding paragraphs.

179. Defendants Microsoft Inc. and Shareholders intended to commit Respondeat Superior. Respondeat Superior is a legal doctrine, most commonly used in tort, that holds an employer or principal legally responsible for the wrongful acts of an employee or agent, if such acts occur within the scope of the employment or agency. Defendants Respondeat Superior was the wrongful and intentional act of placing a tracking and listening device and live audio on devices

using Microsoft Windows without notice resulted in damage and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of Respondeat Superior.

180. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

181. Defendants Microsoft Inc. and Shareholders intended to commit the agent of the corporation committed the crime. The agent of the corporation committed the crime is a corporation to be found guilty of a crime, the crime has to been committed by an agent of the company while acting on behalf of the company. Defendants Microsoft Inc. and Shareholders the agent of the corporation committed the crime was all agents near and remotely was in on the act working through the Microsoft Windows software linked to one another this involves commercial airplanes , satellites communications and so high technology that move fast and far and the agents of Microsoft utilized that even integrated their own systems to link up resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of The agent of the corporation committed the crime.

182. Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

183. Defendants Microsoft Inc. and Shareholders intended to commit while acting within the scope of the agent's authority. While acting within the scope of the agent's authority is if an agent acts within the scope of his/her authority, a principal is bound by the act of his/her agent. Moreover, a principal is responsible for any action or inaction by the principal's agent. Defendants Microsoft Inc. and Shareholders while acting within the scope of the agent's authority was employees as a collective was aware of the car being compromised and agents of

127

the who company was acting in the scope of their employment when the intentional breach occurred. Therefore, Microsoft Inc. and Shareholders is liable of while acting within the scope of the agent's authority.

184.    Defendants owe in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

185.    Defendants Microsoft Inc. and Shareholders intended to commit with an intent to benefit the corporation. With an intent to benefit the corporation is he liability imposed upon a corporation for any criminal act done by any natural person. Liability is imposed so as to regulate the acts of a corporation. The principle of corporate criminal liability is based on the doctrine of respondent superior which is commonly known as the theory of vicarious liability, where the master is made liable for the acts of his servant. Any corporation can be made liable for act of its agent or servant. Defendants Microsoft Inc. and Shareholders with an intent to benefit the corporation was receiving kickbacks not just a few employees the whole organization benefited from the illegal money laundering scheme that span around the world via encrypted satellite systems cellphones avionics it is huge and when one business get paid it goes to parents and other subsidiaries within that same organization structure resulted in damages and Mr. Davis injury. Therefore, defendant Microsoft Inc. and Shareholders is liable of with an intent to benefit the corporation.

186.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

187.    Defendants Microsoft Inc. and Shareholders intended to commit duty. Duty is the responsibility to others to act according to the law. Defendants Microsoft Inc. and Shareholders

duty was to accommodate Mr. Davis per the terms of the agreement and the agreement with to Microsoft owed a duty to Mr. Davis intently break the law resulting damage and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable of duty.

188.    Defendant owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

189.    Defendants Microsoft Inc. and Shareholders intended to commit proximate cause. Proximate cause is an act from which an injury results as a natural, direct, uninterrupted consequence and without which the injury would not have occurred. Defendants Microsoft Inc. and Shareholders proximate cause was uninterrupted harassment, fraud, and unethical behavior and discrimination and sharing Mr. Davis data intented to inflict harm and actions not in his best interest from not allow Mr. the Davis the right to privacy resulted in damages and injury to Mr. Davis. Therefore, defendants Microsoft Inc. and Shareholders is liable for proximate causes.

190.    Defendants owe damages in an amount that exceeds 75,000 for plaintiff injury. Defendants are liable for damages.

191.    As a result of Defendant, illegal actions the plaintiff suffered physical injuries, fear, humiliation, anger, outrage, loss of sleep, PTSD, and other emotional and physical distress

192.    By the conduct alleged above, Plaintiff was deprived of his constitutional rights and due process to obstruction justice and deny equal due process under the law.

193.    The acts alleged above were done intentionally, willfully, maliciously, wantonly with reckless disregard for the safety of the Plaintiff.

194.    At times and dates indicated and herein alleged, each defendant had a duty to keep the plaintiff secure from unlawful and assault, battery, false confinement, and false arrest.

195.    Notwithstanding the duties owed to the Plaintiff, the Defendants failed to prevent the wrongs complained of herein, in violation of 28 U.S.C. § 1331.

WHEREFORE, the Plaintiff prays this court:

A.      For compensatory & punitive damages, injunctive relief, and in an amount exceeding 1,200,000,000,000.00 dollars for the physical and emotional damage he has suffered.

B.      For such other relief as law and equity allows, including costs and reasonable interim and final attorney's fees.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 4/19/2021

Andre Antonio Davis, Plaintiff in Pro Per

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b), the plaintiff demands trial by jury.

DATED: 4/19/2021

Andre Antonio Davis, Plaintiff in Pro Per

131